1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Tigran Guledjian (Cal. Bar No. 207613)
2    tigranguledjian@quinnemanuel.com
     Richard H. Doss (Cal. Bar No. 204078)
3    richarddoss@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone:    (213) 443-3000
5  Facsimile:    (213) 443-3100

6  Attorneys for Plaintiffs Seiko Epson Corporation,
   Epson America, Inc., and Epson Portland Inc.

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 **SEIKO EPSON CORPORATION,** a Japan corporation; **EPSON AMERICA, INC.**, a California corporation; and **EPSON PORTLAND INC.**, an Oregon corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>**CREEK MANUFACTURING LLC**, a California limited liability company; **IMAGE ARMOR, LLC**, an Ohio limited liability company; **I-GROUP TECHNOLOGIES LLC**, an Ohio limited liability company; **SERVICE WATCH SYSTEMS, LLC**, a Wyoming limited liability company; **ANTHONY J. CREEK**, an individual; **BRIAN A. WALKER**, an individual; and **DEAN ARMANDO**, an individual,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR: PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Trial Date:        None Set |

Plaintiffs Seiko Epson Corporation, Epson America, Inc., and Epson Portland Inc., (collectively, "Epson"), for their Complaint herein, allege as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement of United States Patent No. 8,454,116 ("the '116 patent") arising under the patent laws of the United States, 35 U.S.C. § 1 *et. seq.*

2.      The infringing products at issue are aftermarket ink cartridges for use with Epson printers.  Over the years Epson has brought numerous actions in various district courts as well as the United States International Trade Commission ("ITC" or "Commission") for infringement of its patents.  The ITC has issued two general exclusion orders (in ITC Inv. No. 337-TA-946 and ITC Inv. No. 337-TA-565, discussed below) that prohibit the importation of ink cartridges that infringe certain Epson patents, including the '116 patent asserted in this case.  Epson's patent enforcement efforts have been widely publicized and reported by the aftermarket ink cartridge industry and by Epson itself.  As a result, the aftermarket ink cartridge industry is intimately familiar with the two ITC general exclusion orders and Epson's patents.  Players in the aftermarket ink cartridge industry know that importation and sale of ink cartridges for use with Epson printers may violate the ITC's general exclusion orders and infringe Epson's patents, including the '116 patent.  Epson gives notice of its patents, including the '116 patent, by virtual marking of its cartridges pursuant to 35 U.S.C. § 287(a). Nevertheless, infringers continue to import and sell ink cartridges that infringe Epson's patents, including the '116 patent, in flagrant violation of the ITC's general exclusion orders, United States patent law, and Epson's patents.

3.      Defendants in this case are willful infringers of the '116 patent and violators of the ITC's general exclusion orders.  Epson brings this action to recover money damages, for a preliminary and permanent injunction, and for other relief as set forth herein.

### RELATED ACTIONS

4.      This action is related to the following actions because the '116 patent asserted here is/was also asserted in those cases and/or the accused products at issue in this case overlap with the same or similar infringing aftermarket ink cartridges in those cases:

COMPLAINT FOR PATENT INFRINGEMENT

a.  *Seiko Epson Corporation, et al. v. Planet Green Cartridges, Inc. et al.*, Civil No. (being assigned) (C.D. CA.), filed April 10, 2023, currently pending;

b.  *Seiko Epson Corporation, et al. v. Dongguan Ocbestjet Digital Tech. Co., Ltd. et al.*, Civil No. 2:22-cv-04123-AB (JCx) (C.D. CA.), filed June 15, 2022, currently pending;

c.  *Seiko Epson Corporation, et al. v. RJ International Group, Inc.*, Civil No. 2:22-cv-011232-AB (JCx) (C.D. CA.), filed February 18, 2022), concluded by default judgment and permanent injunction;

d.  *Seiko Epson Corporation, et al. v. Vision Imaging Supplies, LLC, et al.*, Civil No. 2:21-cv-02756-MCS (C.D.CA.), filed on March 30, 2021, concluded by settlement, consent judgment and permanent injunction with respect to certain defendants, and dismissal as to certain other defendants;

e.  *Seiko Epson Corporation, et al. v. Audoormatics, Inc., et al.*, Civil No. 2:20-cv-11148-MCS-MAA (C.D.CA.), filed on December 9, 2020, concluded by settlement, consent judgment and permanent injunction with respect to certain defendants, and dismissal as to certain other defendants;

f.  *Seiko Epson Corporation, et al. v. Straightouttaink, LP, et al.*, Civil No. 5:19-cv-08240 (N.D.CA.), filed on December 18, 2019, concluded by default judgment for $1,564,147 and permanent injunction;

g.  *Seiko Epson Corporation, et al. v. Vintrick Inc., et al.*, Civil No. 1:19-cv-10697-CJC-AFM (C.D.CA.), filed on December 18, 2019, concluded by default judgment and permanent injunction;

h.  *Seiko Epson Corporation, et al. v. Prinko Image Co. (USA), Inc.*, Civil No. 2:17-cv-04501-AB (JCx) (C.D. CA.) filed on June 16, 2017, concluded by default judgment and permanent injunction; and

i.  *Seiko Epson Corporation, et al. v. Soldcrazy USA LLC*, Civil No. 2:17-cv-04502-AB (JCx) (C.D. CA.) filed on June 16, 2017, concluded by default judgment and permanent injunction.

5.     In addition, this action is related to *In the Matter of CERTAIN INK CARTRIDGES AND COMPONENTS THEREOF*, Investigation No. 337-TA-946, United States International Trade Commission ("ITC"), Washington, D.C., which was adjudicated by the ITC in a final determination (ITC Opinion, May 26, 2016) (the "ITC 946 Investigation") and in which the Commission issued a General Exclusion Order and certain Cease and Desist Orders that include the '116 patent.  The '116 patent asserted in this case were litigated in the ITC 946 Investigation against the same or overlapping groups of aftermarket ink cartridges that are accused of infringement in this action.

6.     Finally, this action is related to *In the Matter of CERTAIN INK CARTRIDGES AND COMPONENTS THEREOF*, Investigation No. 337-TA-565, United States International Trade Commission, Washington, D.C., which was adjudicated by the ITC in a final determination (ITC Opinion, Oct. 19, 2007) (the "ITC 565 Investigation") and in which the Commission issued a General Exclusion Order and certain Cease and Desist Orders that include various Epson patents, not at issue here, but related insofar as the same or overlapping groups of aftermarket ink cartridges that are accused of infringement in this action were also at issue in the ITC 565 Investigation.

## THE PARTIES

7.     Plaintiff Seiko Epson Corporation ("Seiko Epson") is a corporation organized and existing under the laws of Japan.  Its principal place of business is located at 3-3-5 Owa Suwa-Shi Nagano-Ken, 392-8502, Japan.  Seiko Epson is the assignee of the '116 patent.

8.     Plaintiff Epson America, Inc. ("Epson America") is a corporation organized and existing under the laws of the State of California.  Its principal place of business is located at 3840 Kilroy Airport Way, Long Beach, California 90806.  As the North American sales, marketing and customer service affiliate of Seiko Epson, Epson America is the exclusive licensee of the '116 patent for distributing in the United States Epson ink cartridges that embody the inventions contained in the '116 patent, including cartridges manufactured by Epson Portland Inc.

9.     Plaintiff Epson Portland Inc. ("Epson Portland") is a corporation organized and existing under the laws of the State of Oregon.  Its principal place of business is located at 3950 NE Aloclek Place, Hillsboro, Oregon 97124.  Epson Portland is the exclusive licensee of the '116 patent for manufacturing in the United States Epson ink cartridges that embody the inventions contained in the

'116 patent.  Seiko Epson, Epson America and Epson Portland are sometimes referred to collectively herein as "Epson" or "Plaintiffs."

10.     Plaintiffs produce and sell ink cartridges that operate with Epson ink jet printers utilizing Epson's patented technology and designs in the United States and in this judicial district.

11.     On information and belief, and according to the California Secretary of State, defendant Creek Manufacturing LLC ("Creek Mfg.") is a limited liability company organized and existing under the laws of the State of California.  Based on information and belief, and according to Creek Mfg.'s filings with the California Secretary of State, defendant Anthony J. Creek is a manager and member of the limited liability company and the registered agent for service of process, and the principal place of business address, mailing address, and address for service of process for Creek Mfg. is 118 North 6th Street, Fowler, California 93625.

12.     On information and belief, and according to public records, defendant Anthony J. Creek, is an individual who resides in the state of California, is a manager, member, and the registered agent for service of process for Creek Mfg.  On information and belief, and according to public records, defendant Anthony J. Creek has a residence address of 713 North 6th Street, Fowler, California 93625.

13.     Collectively, defendants Anthony J. Creek and Creek Mfg. are referred to herein as the "Creek Defendants."

14.     On information and belief, and according to the Ohio Secretary of State, defendant Image Armor, LLC ("Image Armor") is a limited liability company organized and existing under the laws of the State of Ohio.  Based on information and belief, and according to Image Armor's filings with the Ohio Secretary of State, defendant Brian A. Walker is a manager, member, and Image Armor's registered agent for service of process, and the principal place of business address, mailing address, and address for service of process for Image Armor is 1247 Seven Mile Drive, New Philadelphia, Ohio 44663, which according to Google Maps is a residential address.

15.     On information and belief, and according to the Ohio Secretary of State, defendant I-Group Technologies LLC ("I-Group") is a limited liability company organized and existing under the laws of the State of Ohio.  Based on information and belief, and according to I-Group's filings with the

COMPLAINT FOR PATENT INFRINGEMENT

Ohio Secretary of State, defendant Brian A. Walker is a manager, member, and the registered agent for service of process on I-Group, and the principal place of business address, mailing address, and address for service of process for Image Armor is 1247 Seven Mile Drive, New Philadelphia, Ohio 44663, the same address as defendants Image Armor and I-Group.

16.     On information and belief, and according to public records, defendant Brian A. Walker, is an individual who resides in the state of Ohio, is a manager, member, and registered agent for service of process for defendants Image Armor and I-Group.  On information and belief, and according to public records, defendant Brian A. Walker has a residential address of 1668 Seven Mile Drive, New Philadelphia, Ohio 44663, which according to Google Maps is a residential address.

17.     Collectively, defendants Brian A. Walker, Image Armor and I-Group are referred to herein as the "Image Armor Defendants."

18.     On information and belief, and according to the Wyoming Secretary of State, defendant Service Watch Systems, LLC ("SWS") is a limited liability company organized and existing under the laws of the State of Wyoming and has a mailing address and principal office address at 375 Oser Avenue, Hauppauge, New York 11788.  Based on information and belief, and according to SWS's filings with the Wyoming Secretary of State, defendant Dean Armando is the sole manager and sole member of the limited liability company with a corporate mailing address listed as Dean Armondo, 16 Verleye Ave., East Northport, NY 11731, and the registered agent for service of process is National Registered Agents, Inc. with an address of 2232 Dell Range Boulevard, Suite 200, Cheyenne, Wyoming 82009.  Based on information and belief, and according to the New York Department of State Division of Corporations, SWS is registered as a foreign limited liability company with a service of process address at 375 Oser Avenue, Hauppauge, New York 11788, the same address as listed in SWS's Wyoming LLC filings with the Wyoming Secretary of State.  On information and belief, and according to public records, SWS also operates under the brand name Garment Printer Ink, with a physical address at 400 Oser Avenue, Suite 2000, Hauppage, New York 11788, which according to Google Maps is a commercial building, and the sign on the door reads:  "Garment Printer Ink – A Service Watch Systems LLC Company.

19.     On information and belief, and according to public records, defendant Dean Armando, is an individual who resides in the state of New York, is the sole manager and sole member of defendant SWS and has a residential address of 22 Manor Road North, Greenlawn, New York 11740, which according to Google Maps is a residential address.

20.     Collectively, defendants Dean Armando and SWS are referred to herein as the "SWS Defendants."

21.     Collectively, the Creek Defendants, Image Armor Defendants, and SWS Defendants, are referred to herein as "Defendants."

22.     On information and belief, Defendants have engaged in and continue to engage in making, manufacturing, offering to sell, and selling ink cartridges and chips that infringe the '116 patent.

23.     On information and belief, Defendants act in concert with each other and with other entities and under fictitious business names to make, manufacture, distribute, offer to sell, and sell ink cartridges that infringe the '116 patent.  On information and belief, Defendants are jointly and severally responsible for the infringements of the '116 patent as they jointly operated and continue to jointly operate and manage the infringing enterprises, including Defendants, and related d/b/a entities, as a single enterprise by comingling resources, assets, operations, commercial activities, and/or they incur expenses and achieve profits jointly for the benefit of the combined enterprise, its owners and officers.

24.     On information and belief, the Creek Defendants conduct business in the United States at least under the name "Creek Manufacturing" and have and continue to conduct business via the Internet by offering for sale and selling cartridges and components thereof that infringe the '116 patent under various seller names via their websites, including but not limited to creekmanufacturing.com and dtgprinterparts.com.  On information and belief, and according to the Creek Defendants' websites, they offer for sale and sell products that infringe the '116 patent under the "Creek Manufacturing," "DTG Printer Parts," and "Image Armor" brands.  On information and belief, the Creek Defendants sell these branded products direct to consumers/end users, and are a listed dealer of Image Armor products as discussed below.  On information and belief, defendant Anthony J. Creek directs and

1   controls the activities of defendant Creek Mfg., including but not limited to offering to sell, selling,

2   and shipping of Defendants' branded products that infringe the '116 patent.

3       25.    On information and belief, the Image Armor Defendants conduct business in the United

4   States at least under the name "Image Armor" and "I-Group," and continue to conduct business via the

5   Internet by offering for sale and selling cartridges and components thereof that infringe the '116 patent

6   under various seller names via their websites, including but not limited to imagearmorpt.com and

7   igrouptech.com.  On information and belief, and according to the Image Armor Defendants' websites,

8   they offer for sale and sell products that infringe the '116 patent, including but not limited to "Image

9   Armor," and "Creek Manufacturing" branded products.  On information and belief, and according to

10  the Image Armor Defendants' websites, they also sell and distribute products via a system of

11  worldwide  dealers,  including  at  least  five  dealers  located  in  California.  *See e.g.*,

12  imagearmorpt.com/purchase (which lists and links the Image Armor Defendants world-wide dealers,

13  including a link to the Creek Defendants' website dtgprinterparts.com).  On information and belief,

14  defendant Brian A. Walker directs and controls the activities of defendants Image Armor and I-Group,

15  including but not limited to offering to sell, selling, and shipping of Defendants' branded products that

16  infringe the '116 patent.

17      26.    On information and belief, the SWS Defendants conduct business in the United States

18  at least under the names "Service Watch Systems" and "Garment Printer Ink," and have and continue

19  to conduct business via the Internet by offering for sale and selling cartridges and components thereof

20  that infringe the '116 patent under various seller names via their websites, including but not limited to

21  garmentprinterink.com.  On information and belief, and according to the SWS Defendants' websites,

22  they offer for sale and sell products that infringe the '116 patent under the "Image Amor" and

23  "Garment Printer Ink" brands.  On information and belief, defendant Dean Armando directs and

24  controls the activities of defendant SWS, including but not limited to offering to sell, selling, and

25  shipping of Defendants' branded products that infringe the '116 patent.

26      27.    On information and belief, Defendants make, manufacture, offer for sale, and sell ink

27  cartridges and components thereof that infringe the '116 patent complained of herein, including

28  through their websites, online marketplace storefronts, dealers, and distributors discussed above in

paragraphs 24-26. Specifically, on information and belief, Image Armor and I-Group each manufacture and sell Accused Products to resellers, including to Creek Mfg. and to SWS, who in turn sell Accused Products to consumers. Creek Mfg. also manufactures Accused Products and sells to consumers.

28.     For example, in the annotated screen capture below of Defendants' listing on their storefront website dtgprinterparts.com, visited on November 16, 2022, Defendants offer for sale infringing ink cartridges for Epson printers and described the infringing ink cartridges as "The F-SERIES inks are designed as a direct replacement for the Epson F2000 and F2100 DTG printers." These infringing ink cartridges are shipped and sold by Defendants under their Image Armor seller name and the products delivered comprise Image Armor branded products and Creek Manufacturing branded products.



29.     As another example, in the annotated screen captures below of Defendants' listing on their storefront website garmentprinterink.com, visited September 22, 2022, Defendants offer for sale infringing ink cartridges for Epson printers and described the infringing ink cartridges as "F-Series White Ink Slot 2 Epson F2000 F2100 ink Cartridge." These infringing ink cartridges are shipped and sold by Defendants under their Image Armor seller name and the products delivered comprise Image Armor branded products and generic (unbranded) products.

1
2
3
4
5
6
7
8
9

 

10       30.     As another example, in the annotated screen captures below of Defendants' listing on

11  their storefront website garmentprinterink.com, visited September 22, 2022, Defendants offer for sale

12  refillable ink cartridges for Epson printers and described the refillable ink cartridges as "Epson F2000

13  F2100 Refillable Cartridge Set," and inform consumers that "YOU WILL NEED TO BUY CHIPS ON

14  ALIBABA for these to WORK, do not buy if you have not sourced out chips.  THESE DO NOT

15  INCLUDE CHIPS."[1]

16
17
18
19
20
21
22
23
24
25
26



27  _____

    [1]  Defendants' offer for sale and sale of these chip-less refillable cartridges constitutes at least

28  inducement to infringe and contributory infringement of the '116 patent.  *See infra* ¶¶ 41-47.

COMPLAINT FOR PATENT INFRINGEMENT

31.     The SWS Defendants also instruct users how to install third-party chips onto cartridges for use with the Epson F2000/F2100 printers, via a video linked from their garmentprinterink.com website titled "GPI Lab Tutorials (shown below), which then takes you to various videos, including one titled "How to Replace the Chip on the Epson F2000/Epson F2100 Garment Printer" (as shown in the second screen capture below).





COMPLAINT FOR PATENT INFRINGEMENT

32.     As another example, in the annotated screen capture below of Defendants' listing on their storefront website creekmanufacturing.com, visited on March 13, 2023, Defendants offer for sale infringing ink cartridges for Epson printers and described the infringing ink cartridges as "Creek Manufacturing F-Series Compatible F2000/F2100 600mL Ink Cartridges."



33.     On information and belief, most sales by Defendants include, but are not limited to "Image Armor" branded, "Creek Manufacturing" branded, or generic (unbranded) infringing ink cartridges.

34.     Purchases of infringing ink cartridges were made by Epson from Defendants' online storefronts on their websites and listings discussed above.  The infringing ink cartridges were shipped by Defendants to Epson from Defendants' address at 116 N. 6th Street, Fowler, California 93625, the same address identified above in paragraphs 11, and from Defendants' 400 Oser Avenue, Hauppauge, New York 11788 address, the same address identified above in paragraphs 18.

35.     On information and belief, Defendants act in concert with each other and with other entities and under fictitious business names to import, manufacture, distribute, offer for sale, and sell ink cartridges that infringe the '116 patent.  On information and belief, Defendants are jointly and

1    severally responsible for the infringements of the '116 patent as they jointly operated and continue to

2    jointly operate and manage the infringing enterprises, including Defendants, and any related d/b/a

3    entities, as a single enterprise by comingling resources, assets, operations, commercial activities, and

4    they incur expenses and achieve profits jointly for the benefit of the combined enterprise, its owners,

5    officers, and members.

6                                    **JURISDICTION AND VENUE**

7            36.     The causes of action herein for patent infringement arise under the patent laws of the

8    United States, 35 U.S.C. § 271.  This Court has subject matter jurisdiction over the claims for patent

9    infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has personal jurisdiction of the

10   Defendants at least because Defendants have committed acts of direct and indirect patent infringement

11   in this judicial district and reside in this judicial district.  Venue is proper in this district under 28

12   U.S.C. §§ 1391(b), (c) and 1400(b).

13                                       **CLAIM FOR RELIEF**

14                             **(Patent Infringement—35 U.S.C. § 271)**

15                          **INFRINGEMENT OF U.S. PATENT NO. 8,454,116**

16           37.     Epson incorporates by reference each and every allegation contained in Paragraphs 1

17   through 36 as though fully set forth at length here.

18           38.     Epson owns all right, title, and interest in, including the right to sue thereon and the

19   right to recover for infringement thereof, of the '116 patent, which was duly and legally issued to

20   Seiko Epson by the United States Patent and Trademark Office on June 4, 2013.  The '116

21   patent relates generally to ink cartridges for printers.  Attached as Exhibit A to this Complaint is a true

22   and correct copy of the '116 patent.  On April 26, 2022, certificate of correction 8,454,116 B2 was

23   duly and legally issued to Seiko Epson by the United States Patent and Trademark Office.  A true and

24   correct copy of the certificate of correction is appended to the end of the '116 patent as part of Exhibit

25   A.  The original patent and the certificate of correction are collectively referred to herein as "the '116

26   patent."

27           39.     The '116 patent is valid and enforceable.

28

---

-13-

40.     On information and belief after conducting a reasonable investigation, Defendants have infringed and are infringing the '116 patent, as defined by at least one claim of the patent in violation of 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and selling in this judicial district and elsewhere aftermarket ink cartridges and aftermarket circuit boards for ink cartridges (sometimes referred to as "chips") for use with Epson printers, including but not limited to ink cartridges and chips for use with at least the following Epson printers: Epson SureColor F2000 and Epson SureColor F2100 -- this includes, for example, ink cartridges and/or chips that are substitutes for genuine Epson ink cartridge model nos. T725100, T725200, T725300, T725400, and T725A00 -- as well as others that are no more than colorably different from the foregoing (collectively, "the Accused Products"). The specific models of the Accused Products identified above were obtained by Epson during its investigation leading to this Complaint from Defendants' online listings on their creekmanufacturing.com, dtgprinterparts.com, and garmentprinterink.com websites and storefronts described above.

41.     As a non-limiting example, set forth below is a claim chart with a description of Defendants' infringement of claim 18 of the '116 patent by the Accused Products.  The infringement is shown using a representative ink cartridge (an Accused Product that is a substitute for genuine Epson Model No. T725300; Control No.[2] 220660) from among the Accused Products purchased from Defendants that, for infringement analysis purposes, is representative of and represents all of Defendants' ink cartridges and chips within the Accused Products (i.e., the represented ink cartridges and chips), including, but not limited to, the models identified above.  The claim chart below refers to this ink cartridge as "the Representative Ink Cartridge."  The Representative Ink Cartridge was designed for use in a specific Epson printer, the Epson SureColor F2100 printer ("the Representative

---

[2]  For identification purposes, a unique "control number" ("Control No.") has been assigned by Epson to each ink cartridge purchased by Epson from Defendants as part of Epson's investigation in support of this Complaint.

Epson Printer"),[3] and for purposes of the analysis set forth herein, the Representative Ink Cartridge was tested in the Representative Epson Printer, as discussed in further detail in the claim chart below.

| Claim 18 of the '116 patent | Where found in the Accused Products |
|---|---|
| [18a].  A circuit board mountable on a printing material container that is used in an ink jet printing apparatus, the ink jet printing apparatus having a print head and a plurality of apparatus-side contact forming members, the printing material container having a body and an ink supply opening, the ink supply opening having an exit on an exterior portion of the body and being adapted to supply ink from the printing material container to the printing apparatus, the circuit board comprising: | A circuit board is mounted on the Representative Ink Cartridge which is a printing material container that is used in an Epson ink jet printing apparatus (e.g., the Representative Epson Printer) that has a print head and a plurality of apparatus-side contact forming members. <br><br> The Representative Ink Cartridge has a body and an ink supply opening that has an exit on an exterior portion of the body and is adapted to supply ink to the ink jet printing apparatus (the Representative Epson Printer). <br><br> The following photos depict the circuit board (green with gold-colored metallic terminals) mounted on the Representative Ink Cartridge. <br><br>  <br><br> The Representative Ink Cartridge is used in any of the following Epson ink jet printer (printing apparatus) models: Epson SureColor F2000 and Epson SureColor F2100 (the "Epson Ink Jet Printers"). <br><br> The following photo depicts the Epson SureColor F2100 ink jet printer. |

---

[3]   From a patent infringement analysis perspective, as set forth herein, the representative Epson Printer is representative of, and represents, all Epson printers that work with the Accused Products.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| | <br><br>The Epson Ink Jet Printers each include a print head for printing and multiple printer-side contact forming members.<br><br>The Representative Ink Cartridge has a body, as depicted below.<br><br><br><br>The Representative Ink Cartridge has an ink supply opening having an exit on an exterior portion of the body. When mounted, the ink supply opening is adapted to supply ink from the printing material container (i.e., the cartridge) to the Epson Ink Jet Printers.<br><br>The following photo depicts the exit of the Representative Ink Cartridge's ink supply opening.<br><br><br><br>Accordingly, the Representative Ink Cartridge literally meets the preamble of claim 18 of the '116 patent. |
| [18b] a memory device adapted to be driven by a memory driving voltage; | The circuit board mounted on the Representative Ink Cartridge comprises a memory device that is adapted to be driven by a memory driving voltage. |

| | |
|---|---|
| | The following photo depicts the circuit board (green with gold-colored metallic terminals) mounted on the Representative Ink Cartridge.  The memory device is located on the back of the circuit board and is not visible in this view.<br><br><br><br>All Epson Ink Jet Printers that accept the Representative Ink Cartridge have similar circuitry and programming in terms of the voltages and signals they apply to their contact forming members and, consequently, to the corresponding contact portions of the Representative Ink Cartridge (the contact portions are located on the gold-colored metallic terminals of the ink cartridge shown above).  In particular, Epson printers apply a maximum voltage of approximately 4 volts (a low voltage as compared to the high voltage discussed in the next limitation) to certain of their contact forming members that in turn correspond to certain of the contact portions of the Representative Ink Cartridge that are connected to the memory.  Consequently, the memory device is adapted to be driven by a memory driving voltage.  This was confirmed through testing during the ITC 946 Investigation.<br><br>Accordingly, the Representative Ink Cartridge literally meets this limitation of claim 18 of the '116 patent. |
| [18c]  an electronic device adapted to receive a voltage higher than the memory driving voltage; and | The circuit board mounted on the Representative Ink Cartridge comprises an electronic device that is adapted to receive a voltage that is a higher voltage than the voltage of the memory device.  The electronic device that receives a higher voltage may be, for example, a resistor, or one or more other coupled electronic components, that is/are capable of receiving a high voltage.  The electronic device is located on the back of a printed circuit board that is mounted on a wall of the Representative Ink Cartridge shown in the above limitation. |

-17-

| | |
|---|---|
| | In particular, Epson printers apply a voltage of approximately 42 volts (a high voltage as compared to the low voltage of approximately 4 volts applied to the memory device discussed in the preceding limitation) to two of their contact forming members that in turn correspond to two of the contact portions of the circuit board mounted on the Representative Ink Cartridge that are connected to the electronic device. Consequently, the electronic device is adapted to receive and function with a high voltage.  This was confirmed through testing during the ITC 946 Investigation.<br><br>Accordingly, the Representative Ink Cartridge literally meets this limitation of claim 18 of the '116 patent. |
| [18d]  a plurality of terminals having contact portions adapted and positioned to contact corresponding apparatus-side contact forming members so that electrical communication is enabled with the ink jet printing apparatus, the contact portions of the terminals including a plurality of memory contact portions electrically coupled to the memory device, a first electronic device contact portion electrically coupled to the electronic device, a second electronic device contact portion electrically coupled to the electronic device, and a short detection contact portion positioned and arranged to electrically contact a contact forming member that itself is electrically coupled to a short detection circuit of the printing apparatus, wherein: | The circuit board mounted on the Representative Ink Cartridge comprises a plurality of terminals that have contact portions.  The contact portions are adapted and positioned on the cartridge so that, when the cartridge is mounted on the printer, the contact portions of the cartridge's terminals contact corresponding printer-side contact forming members so that electrical communication is enabled with the printer.<br><br>As discussed at 18(a) and 18(b) *supra*, the terminals of the Representative Ink Cartridge's circuit board are the gold colored metallic portions on the green circuit board, reproduced in enlarged form below.<br><br>To determine the precise location of the terminals' contact portions, the following steps were taken: (1) black ink was applied to the terminals and the terminal arrangement photographed; (2) the Representative Ink Cartridge was installed in and removed from the Representative Epson Printer; and (3) the terminal arrangement was photographed.  The following photo shows the terminals after the application of black ink.<br><br><br><br>The step of installing and removing the cartridge from |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the printer, causes the printer's contact forming members (discussed at 18(a), *supra*) to leave scratch marks on the terminals thereby removing a portion of the applied black ink.  The following photo shows the terminals after the cartridge was installed and removed from the printer.



The contact portions of the circuit board's terminals are the most pronounced portions of the scratch marks (all of which contact corresponding printer-side contact forming members so that electrical communication is enabled with the printer, e.g., so that the printer can read remaining ink level and other information from the memory device as described in 18(b), *supra*).  The following annotated photo shows the location of the contact portions annotated by red circles.



The contact portions of the circuit board's terminals include a plurality of memory contact portions that are electrically coupled to the memory device.  Each memory contact portion is electrically coupled by the terminal it appears on to a "via," which is a through-hole (through the circuit board) that electrically couples the terminal to wiring on the back of the circuit board.  The wiring on the back of the circuit board electrically couples the via (and, therefore, the contact portion of the terminal) to an electrical lead of the chip containing the memory device mounted on the back of the circuit board.  In combination, these components electrically couple the memory contact portion to the memory device.

The following annotated photo depicts the five memory contact portions (in blue) located on the terminals on the front of the circuit board.



memory contact portions

The contact portions of the circuit board's terminals include a first and second electronic device contact portion that are each electrically coupled to the electronic device (specifically, the resistor).  Each electronic device contact portion is electrically coupled by the terminal it appears on to a via that electrically couples the terminal to wiring located on the back of the circuit board.  The wiring on the back of the circuit board electrically couples the via (and, therefore, the contact portion of the terminal) to an electrical lead of the resistor mounted on the back of the circuit board.  In combination, these components electrically couple the first and second electronic device contact portions to the resistor.

The following annotated photo depicts the first and second electronic device contact portions (in red) located on the terminals on the front of the circuit board.



first electronic device contact portion

second electronic device contact portion

The contact portions of the circuit board's terminals include a short detection contact portion that is positioned and arranged to electrically contact a contact forming member of the Epson Ink Jet Printers that is itself electrically coupled to a short detection circuit of the printers.

The following photo depicts the short detection contact portion (in green).



short detection contact portion

Moreover, all Epson ink jet printers that accept the Representative Ink Cartridge have similar circuitry and programming in terms of the operation of the short

COMPLAINT FOR PATENT INFRINGEMENT

| | detection contact portion. In particular, when the printers are operated while the short detection contact portion is electrically shorted to the second electronic device contact portion, the printers stop the receipt of the voltage higher than the memory driving voltage by the second electronic device contact portion, and display an error message to the user on the display screen of a connected computer and on the printer display screen (if the printer has a display screen). This was confirmed through testing during the ITC 946 Investigation.<br><br>Accordingly, the Representative Ink Cartridge literally meets this limitation of claim 18 of the '116 patent. |
|---|---|
| [18e] the contact portions are arranged so that, when the terminal arrangement is viewed from the vantage of the contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the ink jet printing apparatus, and with the printing material container oriented with the exit of the ink supply opening facing downwards, the contact portion farthest to the left is the first electronic device contact portion, the contact portion that is farthest to the right is the second electronic device contact portion, the contact portion that is second farthest to the right is the short detection contact portion, and the memory contact portions are located to the left of the short detection contact portion and to the right of the first electronic device contact portion. | The contact portions of the Representative Ink Cartridge's circuit board are arranged so that, when the terminal arrangement is viewed from the vantage of the printer's contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the printer, and with the ink cartridge oriented so that the exit of the ink supply opening faces downwards, then the contact portion farthest to the left is the first electronic device contact portion, the contact portion that is farthest to the right is the second electronic device contact portion, the contact portion that is second farthest to the right is a short detection contact portion, and the memory contact portions are located to the left of the short detection contact portion and to the right of the first electronic device contact portion.<br><br>The following photo depicts the terminal arrangement when it is viewed from the vantage of the printer's contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the printer, and with the printing material container oriented so that the exit of the ink supply opening faces downwards. |

COMPLAINT FOR PATENT INFRINGEMENT

terminal arrangement viewed from vantage of
printer's contact forming members . . . with the
exit of the ink supply opening facing downwards

The following photo depicts the arrangement of the
contact portions when the terminal arrangement is
viewed as described above.



Accordingly, the Representative Ink Cartridge literally
meets this limitation of claim 18 of the '116 patent.

42.     On information and belief after conducting a reasonable investigation, Defendants have

and are actively, knowingly, and intentionally aiding and abetting and inducing infringement of the

'116 patent in violation of 35 U.S.C. § 271(b) by non-parties, including end-users, despite Defendants'

knowledge of the '116 patent.  This includes Defendants' offer for sale and sale of chip-less refillable

ink cartridges, as described and set forth in paragraphs 30-31 above, which constitutes inducement to

infringe and contributory infringement at least of claim 9 of the '116 patent.

43.   On information and belief, Defendants had knowledge of the '116 patent prior to, or at least since the filing and service of this complaint on Defendants.

44.   On information and belief, defendant Anthony J. Creek, as the manager and member of defendant Creek Mfg., directs and controls the infringing activities of defendant Creek Mfg. and has taken and continues to take active steps to encourage and induce defendant Creek Mfg. to infringe by actively running and directing the businesses, including but not limited to being the principal decision maker regarding the promotion, advertising, and sale of products that infringe the '116 patent on Defendants' website and storefronts on their website and internet marketplaces, as discussed above in paragraphs 22-35.  Additionally, the Creek Defendants induce end-users to infringe the '116 patent to use the infringing products, and do so with knowledge of the '116 patent or willful blindness that the induced acts constitute infringement of the '116 patent, and with knowledge that when such acts are taken constitute infringement of the '116 patent.

45.   On information and belief, defendant Brian A. Walker, as the manager and member of defendants Image Armor and I-Group, directs and controls the infringing activities of defendants Image Armor and I-Group and has taken and continues to take active steps to encourage and induce defendants Image Armor and I-Group to infringe by actively running and directing the businesses, including but not limited to being the principal decision maker regarding the promotion, advertising, and sale of products that infringe the '116 patent on Defendants' website and storefronts on their website and internet marketplaces, as discussed above in paragraphs 22-35.  Additionally, the Image Armor Defendants induce their distributors/dealers to infringe the '116 patent to offer for sale, sell, and distribute the infringing products, and do so with knowledge of the '116 patent or willful blindness that the induced acts constitute infringement of the '116 patent, and with knowledge that when such acts are taken constitute infringement of the '116 patent.

46.   On information and belief, defendant Dean Armando, as the manager and member of defendant SWS, directs and controls the infringing activities of defendant SWS and has taken and continues to take active steps to encourage and induce defendant SWS to infringe by actively running and directing the businesses, including but not limited to being the principal decision maker regarding the promotion, advertising, and sale of products that infringe the '116 patent on Defendants' website

and storefronts on their website and internet marketplaces, as discussed above in paragraphs 22-35. Additionally, the SWS Defendants induce end-users to infringe the '116 patent to use the infringing products, and do so with knowledge of the '116 patent or willful blindness that the induced acts constitute infringement of the '116 patent, and with knowledge that when such acts are taken constitute infringement of the '116 patent.

47.     On information and belief, the SWS Defendants are also inducing the infringement of the '116 patent in violation of 35 U.S.C. § 271(b) by non-parties by offering to sell or selling within the United States or importing into the United States chip-less refillable ink cartridges to be combined into infringing Accused Products by instructing users "YOU WILL NEED TO BUY CHIPS ON ALIBABA for these to WORK," and "do not buy if you have not sourced out chips," and showing users how to install such chips onto the cartridges. *See*, *infra*, ¶¶ 30-31.  Defendants do so with knowledge of the '116 patent or willful blindness that the induced acts constitute infringement of the '116 patent, and with knowledge that when such acts are taken constitute infringement of the '116 patent.

48.     On information and belief, Defendants are contributing to the infringement of the '116 patent in violation of 35 U.S.C. § 271(c) by non-parties by offering to sell or selling within the United States or importing into the United States components of the patented inventions set forth in the '116 patent, including but not limited to chip-less refillable cartridges and chips.  The components constitute a material part of the inventions.  Defendants know that such components are especially made or especially adapted for use in an infringement of the '116 patent.  The components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

49.     For example, on information and belief, the Creek Defendants are making, offering to sell, selling, and importing into the United States, components (including chip-less cartridges and chips) of ink cartridges that infringe the '116 patent, which constitutes a material part of the inventions covered by one or more claims of the '116 patent, and are not staple articles or commodities of commerce suitable for noninfringing uses.  The Creek Defendants do so with awareness of the '116 patent, and knowledge that the components are especially made or especially adapted for use in an infringement of the '116 patent.

50.     On information and belief, the Image Armor Defendants are making, offering to sell, selling, and importing into the United States, components (including chip-less cartridges and chips) of ink cartridges that infringe the '116 patent, which constitutes a material part of the inventions covered by one or more claims of the '116 patent, and are not staple articles or commodities of commerce suitable for noninfringing uses.  The Image Armor Defendants do so with awareness of the '116 patent, and knowledge that the components are especially made or especially adapted for use in an infringement of the '116 patent.

51.     On information and belief, the SWS Defendants are making, offering to sell, selling, and importing into the United States, components (including chip-less cartridges and chips) of ink cartridges that infringe the '116 patent, which constitutes a material part of the inventions covered by one or more claims of the '116 patent, and are not staple articles or commodities of commerce suitable for noninfringing uses.  The SWS Defendants do so with awareness of the '116 patent, and knowledge that the components are especially made or especially adapted for use in an infringement of the '116 patent.

52.     By reason of Defendants' infringing activities, Epson has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

53.     Defendants' acts complained of herein have damaged and will continue to damage Epson irreparably.  Epson has no adequate remedy at law for these wrongs and injuries.  Epson is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '116 patent.

54.     Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge claimed in the '116 patent, and Defendants' conduct is, in every instance, without Epson's consent.

55.     On information and belief, Defendants' infringement has been and continues to be willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Epson prays for judgment against Defendants as follows:

A.      That the '116 patent is valid and enforceable;

B.      That Defendants have infringed and are infringing the '116 patent;

C.      That such infringement is willful;

D.      That Defendants and their subsidiaries, affiliates, parents, successors, assigns, officers, agents, representatives, servants, and employees, and all persons in active concert or participation with them, be preliminarily and permanently enjoined from continued infringement of the '116 patent;

E.      That Defendants be ordered to pay Epson its damages caused by Defendants' infringement of the '116 patent and that such damages be trebled, together with interest thereon;

F.      That this case be declared exceptional pursuant to 35 U.S.C. § 285 and that Epson be awarded its reasonable attorneys' fees, litigation expenses and expert witness fees, and costs; and

G.      That Epson have such other and further relief as the Court deems just and proper.

<u>**JURY TRIAL DEMAND**</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs request a trial by jury of all issues so triable.

DATED:  April 11, 2023                QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


By____*/s/ Tigran Guledjian*_____

**Tigran Guledjian**
California Bar No. 207613
Email: *tigranguledjian@quinnemanuel.com*
**Richard H. Doss**
California Bar No. 204078
Email: *richarddoss@quinnemanuel.com*
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

*Attorneys for Plaintiffs Seiko Epson Corporation,
Epson America, Inc., and Epson Portland Inc.*

-26-

# Exhibit A

Case 1:23-cv-00570-SAB   Document   Filed   Page   of   PageID

US008454116B2

(12) **United States Patent**

Asauchi

(10) **Patent No.:** **US 8,454,116 B2**

(45) **Date of Patent:** **Jun. 4, 2013**

(54) **PRINTING MATERIAL CONTAINER, AND BOARD MOUNTED ON PRINTING MATERIAL CONTAINER**

(75) Inventor: **Noboru Asauchi**, Nagano (JP)

(73) Assignee: **Seiko Epson Corporation**, Tokyo (JP)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/608,658**

(22) Filed: **Sep. 10, 2012**

(65) **Prior Publication Data**

US 2013/0027483 A1     Jan. 31, 2013

**Related U.S. Application Data**

(63) Continuation of application No. 12/257,914, filed on Oct. 24, 2008, now Pat. No. 8,366,233, which is a continuation of application No. 12/040,308, filed on Feb. 29, 2008, now Pat. No. 7,484,825, which is a continuation of application No. 11/611,641, filed on Dec. 15, 2006, now Pat. No. 7,562,958.

(30) **Foreign Application Priority Data**

Dec. 26, 2005   (JP) ................................. 2005-372028
Aug. 11, 2006   (JP) ................................. 2006-220751

(51) **Int. Cl.**
 *B41J 2/16*          (2006.01)

(52) **U.S. Cl.**
 USPC ............... **347/19**; 347/50; 439/157; 439/534; 439/924.1

(58) **Field of Classification Search**
 None
 See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,683,481 | A | 7/1987 | Johnson |
| 4,739,352 | A | 4/1988 | Gorelick et al. |
| 5,032,855 | A | 7/1991 | Taniguchi et al. |
| 5,049,898 | A | 9/1991 | Arthur et al. |
| 5,278,584 | A | 1/1994 | Keefe et al. |
| 5,565,786 | A | 10/1996 | Balousek |
| 5,610,635 | A | 3/1997 | Murray et al. |
| 5,646,660 | A | 7/1997 | Murray |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 1272081 A | 11/2000 |
| CN | 1532064 A | 9/2004 |

(Continued)

OTHER PUBLICATIONS

Photos of HP No. 10 cartridge.

(Continued)

*Primary Examiner* — Michael Zarroli

(74) *Attorney, Agent, or Firm* — Stroock & Stroock & Lavan LLP

(57) **ABSTRACT**

A printing material container detachably attachable to a printing apparatus having apparatus-side terminals. The container can comprise an electrical device, a memory device and a plurality of terminals. First and second terminals can be coupled to the electrical device and a plurality of memory terminals can be coupled to the memory device. Terminal contact portions are present where the terminals contact a respective apparatus side contact forming member. A short detection contact portion can be positioned to contact a contact forming member that itself is coupled to a short detection circuit of the printing apparatus. The terminals can be arranged with the memory terminal contact portions located to the left of the second terminal contact portion and to the right of the first terminal contact portion. The contact portion that is second farthest to the right can be the third contact portion.

**30 Claims, 22 Drawing Sheets**





**US 8,454,116 B2**

Page 2

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,699,091 | A | 12/1997 | Bullock et al. |
| 5,710,582 | A | 1/1998 | Hawkins et al. |
| 5,751,311 | A | 5/1998 | Drake |
| 5,788,388 | A | 8/1998 | Cowger et al. |
| 5,940,095 | A | 8/1999 | Parish et al. |
| 6,039,428 | A | 3/2000 | Juve |
| 6,086,193 | A | 7/2000 | Shimada et al. |
| 6,130,695 | A | 10/2000 | Childers et al. |
| 6,155,664 | A | 12/2000 | Cook |
| 6,155,678 | A | 12/2000 | Komplin et al. |
| 6,161,915 | A | 12/2000 | Bolash et al. |
| 6,164,743 | A | 12/2000 | Hmelar et al. |
| 6,260,942 | B1 | 7/2001 | Ahne et al. |
| 6,280,017 | B1 | 8/2001 | Miyauchi |
| 6,550,902 | B2 | 4/2003 | Shinada et al. |
| 6,585,359 | B1 | 7/2003 | Gasvoda et al. |
| 6,749,287 | B2 | 6/2004 | Osada et al. |
| 7,008,053 | B2 | 3/2006 | Hashii et al. |
| 7,175,244 | B2 | 2/2007 | Usui et al. |
| 7,201,463 | B2 | 4/2007 | Kosugi et al. |
| 7,219,985 | B2 | 5/2007 | Shinada et al. |
| 7,237,864 | B2 | 7/2007 | Sarmast et al. |
| 7,306,308 | B2 | 12/2007 | Tsukada |
| 2002/0003551 | A1 | 1/2002 | Beck et al. |
| 2002/0024559 | A1 | 2/2002 | Murray et al. |
| 2002/0135623 | A1 | 9/2002 | Tsukada et al. |
| 2002/0167574 | A1 | 11/2002 | Shinada et al. |
| 2002/0171700 | A1 | 11/2002 | Shinada et al. |
| 2002/0180823 | A1 | 12/2002 | Shinada et al. |
| 2003/0043216 | A1 | 3/2003 | Usui et al. |
| 2003/0054003 | A1 | 3/2003 | Leung et al. |
| 2003/0058296 | A1 | 3/2003 | Shinada et al. |
| 2003/0079655 | A1 | 5/2003 | Takahashi et al. |
| 2003/0085969 | A1 | 5/2003 | Shinada et al. |
| 2003/0137568 | A1 | 7/2003 | Shinada et al. |
| 2004/0155913 | A1 | 8/2004 | Kosugi et al. |
| 2005/0057622 | A1 | 3/2005 | Kimura et al. |
| 2005/0146576 | A1 | 7/2005 | Shinada et al. |
| 2005/0146579 | A1 | 7/2005 | Sasaki et al. |
| 2005/0195255 | A1 | 9/2005 | Shinada et al. |
| 2005/0219303 | A1 | 10/2005 | Matsumoto et al. |
| 2005/0237349 | A1 | 10/2005 | Nishihara |
| 2005/0270315 | A1 | 12/2005 | Yamamoto |
| 2006/0007253 | A1 | 1/2006 | Kosugi |
| 2006/0033790 | A1 | 2/2006 | Shinada et al. |
| 2006/0119677 | A1 | 6/2006 | Shinada et al. |
| 2006/0203050 | A1 | 9/2006 | Shinada et al. |
| 2006/0250426 | A1 | 11/2006 | Wanibe et al. |
| 2006/0250446 | A1 | 11/2006 | Wanibe et al. |
| 2007/0149044 | A1 | 6/2007 | Asauchi |
| 2008/0158318 | A1 | 7/2008 | Asauchi |
| 2008/0259135 | A1 | 10/2008 | Asauchi et al. |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 102006060705 A1 | 6/2007 |
| EA | 1155864 A1 | 11/2001 |
| EP | 0412459 A2 | 2/1991 |
| EP | 0593282 A2 | 4/1994 |
| EP | 0789322 A2 | 8/1997 |
| EP | 0805028 A1 | 11/1997 |
| EP | 0812693 A1 | 12/1997 |
| EP | 0873873 A2 | 10/1998 |
| EP | 0882595 A2 | 12/1998 |
| EP | 0997297 A1 | 5/2000 |
| EP | 1013426 A2 | 6/2000 |
| EP | 1219437 A2 | 7/2002 |
| EP | 1279503 A2 | 1/2003 |
| EP | 1281523 A2 | 2/2003 |
| EP | 1300245 A1 | 4/2003 |
| EP | 1314565 A2 | 5/2003 |
| EP | 1462262 A1 | 9/2004 |
| EP | 1188567 A2 | 3/2005 |
| EP | 1514690 A1 | 3/2005 |
| EP | 1097043 B1 | 11/2005 |
| EP | 1598198 A2 | 11/2005 |
| EP | 1792733 A1 | 6/2007 |
| EP | 1800872 A1 | 6/2007 |

| | | | |
|---|---|---|---|
| EP | 2080622 A1 | 7/2009 |
| EP | 2080622 B1 | 2/2011 |
| GB | 2369801 A | 6/2002 |
| GB | 2424623 A | 10/2006 |
| GB | 2446311 A | 8/2008 |
| GB | 2447150 A | 9/2008 |
| JP | 62-184856 A | 8/1987 |
| JP | 02-009645 A | 1/1990 |
| JP | 02-279344 A | 11/1990 |
| JP | 03-211060 A | 9/1991 |
| JP | 05-246032 A | 9/1993 |
| JP | 06-320818 A | 11/1994 |
| JP | 07-052411 A | 2/1995 |
| JP | 07-060954 A | 3/1995 |
| JP | 07-309018 | 11/1995 |
| JP | 08-090871 A | 4/1996 |
| JP | 08-221158 A | 8/1996 |
| JP | 09-174827 A | 7/1997 |
| JP | 10-006535 A | 1/1998 |
| JP | 10-086357 A | 4/1998 |
| JP | 11-312554 A | 11/1999 |
| JP | 11-320857 A | 11/1999 |
| JP | 2000-006413 A | 1/2000 |
| JP | 2000-198190 A | 7/2000 |
| JP | 2001-147146 A | 5/2001 |
| JP | 2002-079655 A | 3/2002 |
| JP | 2002-154222 A | 5/2002 |
| JP | 2002-513340 A | 5/2002 |
| JP | 2002-198627 A | 7/2002 |
| JP | 2003-054003 A | 2/2003 |
| JP | 2003-103796 A | 4/2003 |
| JP | 2003-152297 A | 5/2003 |
| JP | 2004-050573 A | 2/2004 |
| JP | 2004-261970 A | 9/2004 |
| JP | 2004-310312 A | 11/2004 |
| JP | 2005-161764 A | 6/2005 |
| JP | 2005-246664 A | 9/2005 |
| JP | 2005-343037 A | 12/2005 |
| JP | 2005-372028 | 12/2005 |
| JP | 2006-100398 A | 4/2006 |
| JP | 2007-196664 | 8/2007 |
| TW | 310363 | 7/1997 |
| TW | 200520981 | 7/2005 |
| TW | 200526423 A | 8/2005 |
| WO | 98/04414 A1 | 2/1998 |
| WO | 98/55318 A1 | 12/1998 |
| WO | 98/55324 A1 | 12/1998 |
| WO | 02/04215 A1 | 1/2002 |
| WO | 2005/000591 A1 | 1/2005 |
| WO | 2006/025578 A1 | 3/2006 |
| WO | 2006/104258 A1 | 10/2006 |
| WO | 2006104258 A1 | 10/2006 |

OTHER PUBLICATIONS

The Hard Copy Supplies Journal dated Apr. 1998.
HP2000C User Guide.
Dallas Semiconductor, DS1220AB/AD, 16K Nonvolatile SRAM.
Notice of Opposition for EP2080622 dated Dec. 7, 2011.
Opposition Form for EP2080622 filed Nov. 28, 2011.
Grounds of Opposition for EP2080622 dated Nov. 23, 2011 and English translation.
Decision of Appeal for Invalidation 2011-800028 received Nov. 25, 2011 and English translation.
HI.4a-d, Anspruch 1, 10, 11 and 12—EP2080622BA received at the EPO on Nov. 23, 2011.
Office Action issued on Oct. 23, 2012 in Taiwan Patent Appln. No. 099126391 and its English Translation.
U.S. Appl. No. 12/257,827.
Office Action in U.S. Appl. No. 11/572,880 dated Dec. 7, 2010.
Notice of Opposition filed against EP1800872B1, Annexes of the Notice of Opposition, and an English translation thereof.
Accelerated Graphic Port Interface Specification, Jul. 31, 1996, pp. 89-96.
English Translation of Taiwanese Search Report issued Apr. 22, 2010 in a related Taiwanese application.
European Patent Office—Extended European Search Report Pursuant to Rule 62 EPC dated Mar. 8, 2010.

**US 8,454,116 B2**

Page 3

"Written Statement", in Japanese Patent Document No. 4144637, (original Japanese and English), dated Aug. 26, 2011.

"Dallas Semiconductor DS1220AB/AD 16k Nonvolatile SRAM", cited in Japanese Patent Document No. 4144637.

"Rebuttal to Corrected Claims", in Japanese Patent Document No. 4144637, (original Japanese and English) dated Jul. 11, 2011.

"Rebuttal to the Reply Brief", in Japanese Patent Document No. 4144637, (original Japanese and English) dated Jul. 11, 2011.

"Opinion Brief", in Japanese Patent Document No. 4144637, (original Japanese and English) dated Jul. 11, 2011.

"Notice of Examination", in Japanese Patent Document No. 4144637, (original Japanese and English) dated Aug. 22, 2011.

"Notice of Reasons for Rejection (of Amendments)", in Japanese Patent Document No. 4144637, (original Japanese and English) dated Aug. 26, 2011.

Statement of Defense and Counterclaim dated Dec. 29, 2010 in Dutch Case No. 378291 re EP1800872B and English translation.

Defendant's Brief dated Dec. 17, 2010 in Japanese Patent Rights Infringement Demand for Injury case 2010 (Wa) No. 7482 (3-20101217) and English translation.

Response to Complaint dated Sep. 17, 2010 in German Action re EP1800872B and English translation.

Response to Complaint dated Sep. 17, 2010 in German Action re Utility Model DE 20 2006 020 730 U1 and English translation.

Allowed claims of U.S. Appl. No. 11/611,641 (published as US-2007/0149044-A1).

Allowed claims of U.S. Appl. No. 12/040,308 (published as US-2008/0158318-A1).

U.S. Appl. No. 12/257,914.

Defendant's Deed of Appearance and Reply (Italian language version)—Patent infringement litigation based on two counterpart patents EP1800872B1 and IT1374275.

Defendant's Deed of Appearance and Reply (English language version)—Patent infringement litigation based on two counterpart patents EP1800872B1 and IT1374275.

Defendant's Second Preparatory Brief dated Feb. 16, 2011; 2010 (Wa) No. 7482 Patents Rights Infringement Demand for Injunction Case for JP4144637B.

International Preliminary Report on Patentability and Written Opinion dated Jul. 1, 2008 in PCT/JP2006/325448.

Spanish Patent Application P200603218 Search Report and Written Opinion dated Sep. 21, 2009.

Malaysian Patent Application PI20091706 Office Action dated Dec. 31, 2010.

European Patent Application EP10184458.7 Search Report dated Dec. 27, 2010.

Summons to Oral Proceeding and Notification in JP4144637B dated Feb. 22, 2011.

Translation of Summons to Oral Proceeding and Notification in JP4144637B dated Feb. 22, 2011.

Opponent's Comments to the Patent Proprietor's Rejoinder in the Opposition Proceedings of EP 1 800 872 B1.

Notification of Reason for Rejection of Correction From Proceedings regarding JP Patent No. 4144637, dated Mar. 1, 2011.

Combined Search and Examination Report, U.K. Patent Appln. No. GB 0819699.0, Feb. 27, 2009.

Search and Examination Report issued in counterpart application GB0922617.6 by the Intellectual Property Office of the United Kingdom.

Petition to Tokyo District Court, Civil Affairs Div. 29-C in connection with "2010 (wa) No. 7482 Patent Infringement Injunction" dated Feb. 26, 2010, and English translation thereof.

Defendant's first preparatory pleadings to Tokyo District Court, Civil Affairs Div. 29-C in connection with 2010 (wa) No. 7482 Patent Infringement Injunction dated Jun. 7, 2010, and English translation thereof.

Australian Search and Examination Report (May 8, 2007) and letter from Singapore Patent Office forwarding same dated Jun. 4, 2007.

U.S. Appl. No. 11/572,880.

New Zealand Examination Report for NZ patent appln. No. 552094 dated Dec. 19, 2006.

United Kingdom Search Report for UK patent appln. No. GB0625839.6 dated Apr. 20, 2007.

Extended European Search Report for European patent appln. No. 06256540.3 dated May 4, 2007.

International Search Report and Written Opinion for international patent appln. No. PCT/JP2006/325448 dated May 8, 2007.

Search Report for PCT/JP2005/016205 dated Nov. 22, 2005.

English translation of Written Opinion of the International Searching Authority issued in PCT/JP2005/016205 dated Mar. 29, 2007.

Allowed claims corresponding to Application No. 2002-167574.

Allowed claims corresponding to Application No. 2002-171700.

Allowed claims corresponding to Application No. 2002-180823.

Allowed claims corresponding to Application No. 2003-58296.

Allowed claims corresponding to Application No. 2006-33790.

Allowed claims corresponding to Application No. 2006-119677.

Search Report from British patent appln. No. GB0804416.6 dated May 30, 2008.

Defendant's third preparatory pleadings to Tokyo District Court, Civil Affairs Div. 29-C in connection with 2010 (wa) No. 7482 Patent Infringement Injunction dated Sep. 30, 2010.

Defendant's second preparatory pleadings to Tokyo District Court, Civil Affairs Div. 29-C in connection with 2010 (wa) No. 7482 Patent Infringement Injunction dated Sep. 30, 2010.

Defendant's Demand for Judgment to Tokyo District Court, Civil Affairs Div. 29-C in connection with 2010 (wa) No. 7482 Patent Infringement Injunction dated Sep. 29, 2010.

Written Submission by Pelikan Hardcopy Production AG in Opposition Proceedings of EP 1 800 872, dated Aug. 31, 2011.

English Translation of Written Submission by Pelikan Hardcopy Production AG in Opposition Proceedings of EP 1 800 872, dated Aug. 31, 2011.

Interlocutory decision in opposition proceedings for EP-B-1 800 872 dated Nov. 29, 2011.

Dallas Semiconductor, DS1220AB/AD, 16K Nonvolatile SRAM, apparently dated Feb. 19, 1998 and listed on an EPO Opposition filing dated Nov. 23, 2011.

Photos of HP No. 10 cartridge listed on an EPO Opposition filing dated Nov. 23, 2011.

HP2000C User Guide listed on an EPO Opposition filing dated Nov. 23, 2011.

Allowed claims corresponding to US Application No. 2006-0033790 filed Oct. 19, 2005.

Allowed claims corresponding to US Application No. 2006-0119677 filed Jan. 30, 2006.

Defendant's Deed of Appearance and Reply (Italian language version)—Patent infringement litigation based on two counterpart patents EP1800872B1 and IT1374275 dated Feb. 9, 2011.

Defendant's Deed of Appearance and Reply (English language version)—Patent infringement litigation based on two counterpart patents EP1800872B1 and IT1374275 dated Feb. 9, 2011.

U.S. Appl. No. 11/572,880, filed Jun. 25, 2008.

Opponent's Comments to the Patent Proprietor's Rejoinder in the Opposition Proceedings of EP1800872B1 dated Jan. 27, 2011.

Notice of Opposition filed against EP1800872B1, Annexes of the Notice of Opposition, and an English translation thereof dated Dec. 7, 2011.

Search and Examination Report issued in counterpart application GB0922617.6 by the Intellectual Property Office of the United Kingdom dated Mar. 12, 2010.

Allowed claims of U.S. Appl. No. 11/611,641 (published as US-2007/149044-A1) filed Dec. 15, 2006.

Allowed claims of U.S. Appl. No. 12/040,308 (published as US-2008/158318-A1) filed Feb. 29, 2008.

U.S. Appl. No. 12/257,827, filed Oct. 24, 2008.

Allowed claims corresponding to Publication No. US-2002-0167574-A1 published Nov. 14, 2002.

Allowed claims corresponding to Publication No. US-2002-0171700-A1 published Nov. 21, 2002.

Allowed claims corresponding to Application No. US-2002-0180823-A1 published Dec. 5, 2002.

Allowed claims corresponding to Application No. US-2003-0058296-A1 published Mar. 27, 2003.

Response to Appeal dated Oct. 1, 2012 for European Patent No. 1800872 B1.

**US 8,454,116 B2**

Page 4

English translation of Response to Appeal dated Oct. 1, 2012 for European Patent No. 1800872 B1.

Statement of grounds for appeal for EP 1800872 B1 dated Apr. 10, 2012 and English translation.

Canon Colour Bubble Jet Printer BJC-7000 User Manual dated 1997 and English translation.

Affidavit of Daniel Sulser regarding analysis of "T0714" Epson ink cartrige and "Epson Stylus D78" and photos from Sep. 2006 and English translation.

Article on Epson Stylus D120 dated Dec. 14, 2007 and English translation.

Article on Epson Stylus D78 and D88 plus dated Aug. 21, 2006 and English translation.

Photo of Epson cartridge dated Apr. 10, 2012.

Affidavit of Joachim Kretschmer regarding analysis of "T071x" Epson ink cartrige and "Epson Stylus D78" dated Apr. 10, 2012 and English translation.



Fig.1

Fig.2



Fig.3A



Fig.3B



Fig.4





Fig.5



Fig.6B



Fig.6A

Fig.7



Fig.8



Fig.9





Fig.10C

typeC



Fig.10B

typeB



Fig.10A

typeA

Fig.11





Fig.13



Fig.14A



Fig.14B



Fig.14C



Fig.14D



Fig.15A



Fig.15B



Fig.15C



Fig.16A

Fig.16B

Fig.16C

Fig.16D







Fig.17A

Fig.17B



Fig.17C

Fig.17D

Case 1:23-cv-00570-SAB   Document 1   Filed 04/11/23   Page 48 of 71

## Fig.18A

A–A CROSS SECTION



## Fig.18B

B–B CROSS SECTION

## Fig.18C

C–C CROSS SECTION



## Fig.18D

D–D CROSS SECTION



Fig.19A

Fig.19B

Fig.19C

E–E CROSS SECTION

Fig.19D

F–F CROSS SECTION





Fig.20



Fig.21

## Fig.22



## Fig.23



Fig.24



**1**

# PRINTING MATERIAL CONTAINER, AND BOARD MOUNTED ON PRINTING MATERIAL CONTAINER

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of copending application Ser. No. 12/257,914, filed Oct. 24, 2008, which is a continuation of application Ser. No. 12/040,308, filed on Feb. 29, 2008, now U.S. Pat. No. 7,484,825, which is a continuation of application Ser. No. 11/611,641, filed on Dec. 15, 2006, now U.S. Pat. No. 7,562,958.

This application relates to and claims priority from Japanese Patent Applications No. 2005-372028, filed on Dec. 26, 2005 and No. 2006-220751, filed on Aug. 11, 2006, the entire disclosures of which are incorporated by reference herein.

## BACKGROUND

1. Technical Field

The present invention relates in general to a printing material container containing a printing material and a board mounted on the printing material container, and relates in particular to an arrangement for a plurality of terminals disposed on these components.

2. Description of the Related Art

In recent years, it has become common practice to equip ink cartridges used in ink jet printers or other printing apparatus, with a device, for example, a memory for storing information relating to the ink. Also disposed on such ink cartridges is another device, for example, a high voltage circuit (e.g. a remaining ink level sensor using a piezoelectric element) applied to higher voltage than the driving voltage of the memory. In such cases, there are instances in which the ink cartridge and the printing apparatus are electrically connected through terminals. There is proposed a structure for preventing the information storage medium from shorting and becoming damaged due to a drop of liquid being deposited on the terminals connecting the printing apparatus with the storage medium furnished to the ink cartridge.

However, the technologies mentioned above do not contemplate an ink cartridge having equipped with a plurality of devices, for example, a memory and a high voltage circuit, with terminals for one device and the terminals for another device. With this kind of cartridge, there was a risk that shorting could occur between a terminal for the one device and the terminal for the another device. Such shorting caused the problem of possible damage to the ink cartridge or to the printing apparatus in which the ink cartridge is attached. This problem is not limited to ink cartridges, but is a problem common to receptacles containing other printing materials, for example, toner.

## SUMMARY

An advantage of some aspects of the present invention is to provide a printing material container having a plurality of devices, wherein damage to the printing material container and the printing apparatus caused by shorting between terminals can be prevented or reduced.

A first aspect of the invention provides a printing material container detachably attachable to a printing apparatus having a plurality of apparatus-side terminals. The printing material container pertaining to the first aspect of the invention comprises a first device, a second device and a terminal group that includes a plurality of first terminals, at least one second

**2**

terminal and at least one third terminal. The plurality of first terminals are connected to the first device and respectively include a first contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one second terminal is connected to the second device and includes a second contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal and includes a third contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one second contact portion, the plurality of the first contact portions, and the at least one third contact portion are arranged so as to form one or multiple rows. The at least one second contact portion is arranged at an end of one row among the one or multiple rows.

According to the printing material container pertaining to the first aspect of the invention, the second contact portions of the second terminals connected to the second device are arranged at the ends, whereby other contact portions adjacent to the second contact portions are fewer in number, and consequently the second terminals have less likelihood of shorting to terminals include other contact portions. Accordingly, damage to the printing material container or printing apparatus caused by such shorting can be prevented or reduced.

A second aspect of the invention provides printing material container detachably mountable to a printing apparatus having a plurality of apparatus-side terminals. The printing material container pertaining to the second aspect of the invention comprises a first device, a second device, a group of terminals for connection to the apparatus-side terminals and comprising a plurality of first terminals, at least one second terminal, and at least one third terminal. The plurality of first terminals are connected to the first device. The at least one second terminal is connected to the second device. At least a portion of the at least one third terminal is arranged relative to at least a portion of the at least one second terminal, without a said first terminal therebetween in at least one direction, for the detection of shorting between the at least one second terminal and the at least one third terminal.

According to the printing material container pertaining to the second aspect of the invention, at least a portion of the at least one third terminal is arranged relative to at least a portion of the at least one second terminal, without a said first terminal therebetween in at least one direction. As a result, shorting between the portion of the at least one third terminal and the potion of the at least one second terminal have a greater tendency to occur than shorting between the first terminal and the second terminal. Accordingly, in the event that the shorting between the first terminal and the second terminal occurs by a drop of ink or foreign matter, it is highly likely that the shorting between the portion of the at least one third terminal and the potion of the at least one second terminal also occurs, and is detected as anomaly. As a result, damage to the printing material container or printing apparatus caused by a shorting between the first terminal and the second terminal can be prevented or reduced.

A third aspect of the invention provides a printing material container detachably mountable to a printing apparatus having a plurality of apparatus-side terminals. The printing material container pertaining to the third aspect of the invention comprises a first device, a second device, a group of terminals for connection to the apparatus-side terminals and comprising a plurality of first terminals, at least one second terminal, and at least one third terminal. The plurality of first terminals are connected to the first device. The at least one second terminal is connected to the second device. The at least one

**3**

third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal. At least a portion of the at least one third terminal is located adjacently to at least a portion of the at least one second terminal in at least one direction.

According to the printing material container pertaining to the third aspect of the invention, at least a portion of the at least one third terminal is located adjacently to at least a portion of the at least one second terminal. As a result, shorting between the portion of the at least one third terminal and the potion of the at least one second terminal have a greater tendency to occur than shorting between the first terminal and the second terminal. Accordingly, in the event that the shorting between the first terminal and the second terminal occurs by a drop of ink or foreign matter, it is highly likely that the shorting between the portion of the at least one third terminal and the potion of the at least one second terminal also occurs, and is detected as anomaly. As a result, damage to the printing material container or printing apparatus caused by a shorting between the first terminal and the second terminal can be prevented or reduced.

A fourth aspect of the invention provides printing material container detachably mountable to a printing apparatus having a apparatus-side terminal group. The apparatus-side terminal group includes a plurality of first apparatus-side terminals, a plurality of second apparatus-side terminals, and a plurality of third apparatus-side terminals. Terminals within the apparatus-side terminal group are arranged so as to form a first row and second row. The plurality of second apparatus-side terminals are respectively arranged at each end of the first row and the third apparatus-side terminals are respectively arranged at each end of the second row. Each of the second apparatus-side terminals is adjacent to any of the third apparatus-side terminals. The printing material container pertaining to the fourth aspect of the invention comprises a first device, a second device, a group of terminals comprising a plurality of first terminals, at least one second terminal, and at least one third terminal. The plurality of first terminals are connected to the first device and are respectively contactable to a corresponding terminal among the first apparatus-side terminals. The at least one second terminal is connected to the second device and is respectively contactable to a corresponding terminal among the second apparatus-side terminals. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal and is respectively contactable to a corresponding terminal among the third apparatus-side terminals.

The printing material container pertaining to the fourth aspect of the invention can afford working effects analogous to those of the printing material container pertaining to the first aspect. The printing material container pertaining to the fourth aspect of the invention may be reduced to practice in various forms, in the same manner as the printing material container which pertaining to the first aspect.

A fifth aspect of the invention provides a printing material container detachably attachable to a printing apparatus having a plurality of apparatus-side terminals. The printing material container pertaining to the fifth aspect of the invention comprises a first device, a second device, and a terminal group that includes a plurality of first terminals, at least one second terminal and at least one third terminal. The plurality of first terminals are connected to the first device. The at least one second terminal is connected to the second device. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal. Each of the terminals has an circumferential

**4**

edge, a portion of the circumferential edge of the third terminal facing a portion of the circumferential edge of the second terminal and a portion of the circumferential edge of the one first terminal facing another portion of the circumferential edge of the second terminal. The length of the portion of circumferential edge of the third terminal is longer than that of the portion of the circumferential edge of the one first terminal.

According to the printing material container pertaining to the fifth aspect of the invention, the length of the portion of circumferential edge of the third terminal is longer than that of the portion of the circumferential edge of the one first terminal. As a result, shorting between the third terminal and the second terminal have a greater tendency to occur than shorting between the first terminal and the second terminal. Accordingly, in the event that the shorting between the first terminal and the second terminal occurs by a drop of ink or foreign matter, it is highly likely that the shorting between the portion of the at least one third terminal and the potion of the at least one second terminal also occurs, and is detected as anomaly. As a result, damage to the printing material container or printing apparatus caused by a shorting between the first terminal and the second terminal can be prevented or reduced.

A sixth aspect of the invention provides a board mountable on a printing material container detachably attachable to a printing apparatus that has a plurality of apparatus-side terminals. The printing material container has second device. The board pertaining to the sixth aspect of the invention comprises a first device and a terminal group that includes a plurality of first terminals, at least one second terminal and at least one third terminal. The plurality of first terminals are connected to the first device and respectively include a first contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one second terminal is connectable to the second device and includes a second contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal and includes a third contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one second contact portion, the plurality of the first contact portions, and the at least one third contact portion are arranged so as to form one or multiple rows. The at least one second contact portion is arranged at an end of one row among the one or multiple rows.

A seventh aspect of the invention provides a board mountable on a printing material container detachably attachable to a printing apparatus that has a plurality of apparatus-side terminals. The printing material container has second device. The board pertaining to the seventh aspect of the invention comprises a first device and a group of terminals for connection to the apparatus-side terminals and comprising a plurality of first terminals, at least one second terminal, and at least one third terminal. The plurality of first terminals are connected to the first device. The at least one second terminal is connected to the second device. At least a portion of the at least one third terminal is arranged relative to at least a portion of the at least one second terminal, without a said first terminal therebetween in at least one direction, for the detection of shorting between the at least one second terminal and the at least one third terminal.

An eighth aspect of the invention provides a board mountable on a printing material container detachably attachable to a printing apparatus that has a plurality of apparatus-side terminals. The printing material container has second device.

**5**

The board pertaining to the eighth aspect of the invention comprises a first device and a group of terminals for connection to the apparatus-side terminals and comprising a plurality of first terminals, at least one second terminal, and at least one third terminal. The plurality of first terminals are connected to the first device. The at least one second terminal is connected to the second device. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal. At least a portion of the at least one third terminal is located adjacently to at least a portion of the at least one second terminal in at least one direction.

A ninth aspect of the invention provides a board mountable on a printing material container detachably attachable to a printing apparatus having a apparatus-side terminal group that includes a plurality of first apparatus-side terminals, a plurality of second apparatus-side terminals, and a plurality of third apparatus-side terminals. Terminals within the apparatus-side terminal group are arranged so as to form a first row and second row. The plurality of second apparatus-side terminals are respectively arranged at each end of the first row and the third apparatus-side terminals are respectively arranged at each end of the second row. Each of the second apparatus-side terminals is adjacent to any of the third apparatus-side terminals. The printing material container has second device. The board pertaining to the ninth aspect of the invention comprises a first device and a group of terminals comprising a plurality of first terminals, at least one second terminal, and at least one third terminal. The plurality of first terminals are connected to the first device and are respectively contactable to a corresponding terminal among the first apparatus-side terminals. The at least one second terminal is connected to the second device and is respectively contactable to a corresponding terminal among the second apparatus-side terminals. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal and is respectively contactable to a corresponding terminal among the third apparatus-side terminals.

A tenth aspect of the invention provides a board mountable on a printing material container detachably attachable to a printing apparatus that has a plurality of apparatus-side terminals. The printing material container has second device. The board pertaining to the tenth aspect of the invention comprises a first device and a terminal group that includes a plurality of first terminals, at least one second terminal and at least one third terminal. The plurality of first terminals are connected to the first device. The at least one second terminal is connected to the second device. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal. Each of the terminals has an circumferential edge, a portion of the circumferential edge of the third terminal facing a portion of the circumferential edge of the second terminal and a portion of the circumferential edge of the one first terminal facing another portion of the circumferential edge of the second terminal. The length of the portion of circumferential edge of the third terminal is longer than that of the portion of the circumferential edge of the one first terminal.

An eleventh aspect of the invention provides a board mountable on a printing material container detachably attachable to a printing apparatus that has a plurality of apparatus-side terminals. The printing material container has a second device. The board pertaining to the eleventh aspect of the invention comprises a first device and a terminal group that includes at least a plurality of first terminals, at least one cut-out portions into which a respective second terminal

**6**

mounted on the printing material container can be inserted and at least one third terminal. The plurality of first terminals are connectable to the first device and respectively include a first contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one second terminal is connectable to the second device and includes a second contact portion for contacting a corresponding terminal among the plurality of apparatus-side-terminals. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal and includes a third contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. When mounted on the printing material container, the at least one third contact portion is located adjacently to the at least one second contact portion. When mounted on the printing material container, the at least one second contact portion, the plurality of the first contact portions, and the at least one third contact portion are arranged so as to form one or multiple rows. When mounted on the printing material container, the at least one second contact portion is arranged at an end of one row among the one or multiple rows.

A twelfth aspect of the invention provides a board connectable to a printing apparatus that has a plurality of apparatus-side terminals. The board pertaining to the twelfth aspect of the invention comprises a terminal group that includes a plurality of first terminals, at least one second terminal and at least one third terminal. The plurality of first terminals are connected to a first device and respectively include a first contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one second terminal is connectable to a second device and includes a second contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one third terminal is for the detection of shorting between the at least one second terminal and the at least one third terminal and includes a third contact portion for contacting a corresponding terminal among the plurality of apparatus-side terminals. The at least one second contact portion, the plurality of the first contact portions, and the at least one third contact portion are arranged so as to form one or multiple rows. The at least one second contact portion is arranged at an end of one row among the one or multiple rows.

The boards pertaining to the sixth to the twelfth aspects of the invention can afford working effects analogous to those of the printing material container pertaining to the first to the fifth aspects respectively. The boards pertaining to the sixth to eleventh aspects may be reduced to practice in various forms, in the same manner as the printing material container pertaining to the first to the fifth aspects respectively.

The above and other objects, characterizing features, aspects and advantages of the present invention will be clear from the description of preferred embodiments presented below along with the attached figures.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows a perspective view of the construction of the printing apparatus pertaining to an embodiment of the invention;

FIG. **2** shows a perspective view of the construction of the ink cartridge pertaining to the embodiment;

FIGS. **3**A-B show diagrams of the construction of the board pertaining to the embodiment;

FIG. **4** shows an illustration showing attachment of the ink cartridge in the holder;

7

FIG. **5** shows an illustration showing the ink cartridge attached to the holder;

FIGS. **6**A-B show schematics of the construction of the contact mechanism;

FIG. **7** shows a brief diagram of the electrical arrangement of the ink cartridge and the printing apparatus;

FIG. **8** shows a brief diagram of the electrical arrangement, focusing on the cartridge detection/short detection circuit;

FIG. **9** shows a flowchart depicting the processing routine of the cartridge determination process;

FIGS. **10**A-C show illustrations depicting three types of terminal lines on the board;

FIG. **11** shows a flowchart depicting the processing routine of the remaining ink level detection process;

FIGS. **12**A-C show timing charts depicting temporal change in the shorting-detection enable signal and sensor voltage during execution of the remaining ink level detection process;

FIG. **13** shows an illustration of a scenario of shorting;

FIGS. **14**A-D show first diagrams depicting boards pertaining to variations;

FIGS. **15**A-C show second diagrams depicting boards pertaining to variations;

FIGS. **16**A-D show third diagrams depicting boards pertaining to variations;

FIGS. **17**A-D show diagrams depicting the construction around boards of ink cartridges pertaining to variations;

FIGS. **18**A-D show cross sections A-A to D-D in FIG. **17**;

FIGS. **19**A-D show fourth diagrams depicting boards pertaining to variations;

FIG. **20** shows a perspective view of the construction of the ink cartridge pertaining to a variation;

FIG. **21** shows a picture of the ink cartridge pertaining to a variation being attached to the printer;

FIG. **22** shows a first diagram of the construction of the ink cartridge pertaining to a variation;

FIG. **23** shows a second diagram of the construction of the ink cartridge pertaining to a variation;

FIG. **24** shows a third diagram of the construction of the ink cartridge pertaining to a variation.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Embodiments of the present invention will be described below with reference to the drawings.

A. Embodiment

Arrangement of Printing Apparatus and Ink Cartridge:

FIG. **1** shows a perspective view of the construction of the printing apparatus pertaining to an embodiment of the invention. The printing apparatus **1000** has a sub-scan feed mechanism, a main scan feed mechanism, and a head drive mechanism. The sub-scan feed mechanism carries the printing paper P in the sub-scanning direction using a paper feed roller **10** powered by a paper feed motor, not shown. The main scan feed mechanism uses the power of a carriage motor **2** to reciprocate in the main scanning direction a carriage **3** connected to a drive belt. The head drive mechanism drives a print head **5** mounted on the carriage **3**, to eject ink and form dots. The printing apparatus **1000** additionally comprises a main control circuit **40** for controlling the various mechanisms mentioned above. The main control circuit **40** is connected to the carriage **3** via a flexible cable **37**.

The carriage **3** comprises a holder **4**, the print head **5** mentioned above, and a carriage circuit, described later. The holder **4** is designed for attachment of a number of ink cartridges, described later, and is situated on the upper face of the

8

print head **5**. In the example depicted in FIG. **1**, the holder **4** is designed for attachment of four ink cartridges, e.g. individual attachment of four types of ink cartridge containing black, yellow, magenta, and cyan ink. Four openable and closable covers **11** are attached to the holder **4** for each attached ink cartridge. Also disposed on the upper face of the print head **5** are ink supply needles **6** for supplying ink from the ink cartridges to the print head **5**.

The construction of the ink cartridge pertaining to the embodiment will now be described with reference of FIGS. **2-5**. FIG. **2** shows a perspective view of the construction of the ink cartridge pertaining to the embodiment. FIGS. **3**A-B show diagrams of the construction of the board pertaining to the embodiment. FIG. **4** shows an illustration showing attachment of the ink cartridge in the holder. FIG. **5** shows an illustration showing the ink cartridge attached to the holder. The ink cartridge **100** attached to the holder **4** comprises a housing **101** containing ink, a lid **102** providing closure to the opening of the housing **101**, a board **200**, and a sensor **104**. On the bottom face of the housing **101** there is formed an ink supply orifice **110** into which the aforementioned ink supply needle **6** inserts when ink cartridge **100** is attached to the holder **4**. At the upper edge of the front face FR of the housing **101** there is formed a flared section **103**. On the lower side of the center of the front face FR of the housing **101** there is formed a recess **105** bounded by upper and lower ribs **107**, **106**. The aforementioned board **200** fits into this recess **105**. The sensor **104** is located in the region posterior to the board **200**. The sensor **104** is used to detect remaining ink level, as will be described later.

FIG. **3**A depicts the arrangement on the surface of the board **200**. This surface is the face that is exposed to the outside when the board **200** is mounted on the ink cartridge **100**. FIG. **3**B depicts the board **200** viewed from the side. A boss slot **201** is formed at the upper edge of the board **200**, and a boss hole **202** is formed at the lower edge of the board **200**. As shown in FIG. **1**, with the board **200** attached to the recess **105** of the housing **101**, bosses **108** and **109** formed on the lower face of the recess **105** mate with the boss slot **201** and the boss hole **202** respectively. The distal ends of the bosses **108** and **109** are crushed to effect caulking. The board **200** is secured within the recess **105** thereby.

The following description of attachment of the ink cartridge **100** makes reference to FIG. **4** and FIG. **5**. As depicted in FIG. **4**, the cover **11** is designed to be rotatable about a rotating shaft **9**. With the cover **11** rotated upward to the open position, when the ink cartridge **100** is being attached to the holder, the flared section **103** of the ink cartridge is received by a projection **14** of the cover **11**. When the cover **11** is closed from this position, the projection **14** rotates downward, and the ink cartridge **100** descends downward (in the Z direction in FIG. **4**). When the cover **11** is completely closed, a hook **18** of the cover **11** interlocks with a hook **16** of the holder **4**. With the cover **11** completely closed, the ink cartridge **100** is secured pressed against the holder **4** by an elastic member **20**. Also, with the cover **11** completely closed, the ink supply needle **6** inserts into the ink supply orifice **110** of the ink cartridge **100**, and the ink contained in the ink cartridge **100** is supplied to the printing apparatus **1000** via the ink supply needle **6**. As will be apparent from the preceding description, the ink cartridge **100** is attached to the holder **4** by means of inserting it so as to move in the forward direction of the Z axis in FIG. **4** and FIG. **5**. The forward direction of the Z axis in FIG. **4** and FIG. **5** shall also be referred to as insertion direction of the ink cartridge **100**.

Returning to FIG. **3**, the board **200** shall be described further. The arrow R in FIG. **3**(*a*) indicates the insertion

9

direction of the ink cartridge **100** discussed above. As depicted in FIG. **3**, the board **200** comprises a memory **203** disposed on its back face, and a terminal group composed of nine terminals **210-290** disposed on its front face. The memory **203** stores information relating to the ink contained in the ink cartridge **100**. The terminals **210-290** are generally rectangular in shape, and are arranged in two rows generally orthogonal to the insertion direction R. Of the two rows, the row on the insertion direction R side, i.e. the row situated on the lower side in FIG. **3**(*a*), shall be termed the lower row, and the row on the opposite side from the insertion direction R, i.e. the row situated on the upper side in FIG. **3**(*a*), shall be termed the upper row. The terminals arranged so as to form the upper row consist, in order from left in FIG. **3**(*a*), of a first short detection terminal **210**, a ground terminal **220**, a power supply terminal **230**, and a second short detection terminal **240**. The terminals arranged so as to form the lower row consist, in order from left in FIG. **3**(*a*), of a first sensor drive terminal **250**, a reset terminal **260**, a clock terminal **270**, a data terminal **280**, and a second sensor drive terminal **290**. As depicted in FIG. **3**, each of the terminals **210-290** contains in its center portion a contact portion CP for contacting a corresponding terminal among the plurality of apparatus-side terminals, described later.

The terminals **210-240** forming the upper row and the terminals **250-290** forming the lower row are arranged differently from one another, constituting a so-called staggered arrangement, so that the terminal centers do not line up with one another in the insertion direction R. As a result, the contact portions CP of the terminals **210-240** forming the upper row and the contact portions CP of the terminals **250-290** forming the lower row are similarly arranged differently from one another, constituting a so-called staggered arrangement.

As will be appreciated from FIG. **3A**, the first sensor drive terminal **250** is situated adjacently to two other terminals (the reset terminal **260** and the first short detection terminal **210**), and of these, the first short detection terminal **210** for detecting shorting is positioned closest to the first sensor drive terminal **250**. Similarly, the second sensor drive terminal **290** is situated adjacently to two other terminals (the second short detection terminal **240** and the data terminal **280**), and of these, the second short detection terminal **240** for detecting shorting is positioned closest to the second sensor drive terminal **290**.

With regard to relationships among the contact portions CP, the contact portion CP of the first sensor drive terminal **250** is situated adjacently to the contact portions CP of two other terminals (the reset terminal **260** and the first short detection terminal **210**). Similarly, the contact portion CP of the second sensor drive terminal **290** is situated adjacently to the contact portions CP of two other terminals (the second short detection terminal **240** and the data terminal **280**).

As will be appreciated from FIG. **3A**, the first sensor drive terminal **250** and the second sensor drive terminal **290** are situated at the ends of the lower row, i.e. at the outermost positions in the lower row. The lower row is composed of a greater number of terminals than the upper row, and the length of the lower row in the direction orthogonal to the insertion direction R is greater than the length of the upper row, and consequently of all the terminals **210-290** contained in the upper and lower rows, the first sensor drive terminal **250** and the second sensor drive terminal **290** are situated at the outermost positions viewed in the direction orthogonal to the insertion direction R.

With regard to relationships among the contact portions CP, the contact portion CP of the first sensor drive terminal

10

**250** and the contact portion CP of the second sensor drive terminal **290** are respectively situated at the ends of the lower row formed by the contact portions CP of the terminals, i.e., at the outermost positions in the lower row. Among the contact portions of all the terminals **210-290** contained in the upper and lower rows, the contact portion CP of the first sensor drive terminal **250** and the contact portion CP of the second sensor drive terminal **290** are situated at the outermost positions viewed in the direction orthogonal to the insertion direction R.

As will be appreciated from FIG. **3A**, the first short detection terminal **210** and the second short detection terminal **240** are respectively situated at the ends of the upper row, i.e., at the outermost positions in the upper row. As a result, the contact portion CP of the first short detection terminal **210** and the contact portion CP of the second short detection terminal **240** are similarly located at the ends of the upper row formed by the contact portions CP of the terminals, i.e. at the outermost positions in the upper row. Consequently, as will be discussed later, the terminals **220**, **230**, **260**, **270** and **280** connected to the memory **203** are situated between the first short detection terminal **210** and the first sensor drive terminal **250**, and the second short detection terminal **240** and the second sensor drive terminal **290**, located to either side.

In the embodiment, the board **200** has width of approximately 12.8 mm in the insertion direction R, width of the approximately 10.1 mm in the direction orthogonal to the insertion direction R, and thickness of approximately 0.71 mm. The terminals **210-290** each have width of approximately 1.8 mm in the insertion direction R and width of approximately 1.05 mm in the direction orthogonal to the insertion direction R. The dimension values given here are merely exemplary, with differences on the order of ±0.5 mm being acceptable, for example. The spacing between adjacent terminals in a given row (the lower row or the upper row), for example the interval K between the first short detection terminal **210** and the ground terminal **220**, is 1 mm for example. With regard to spacing among terminals, differences on the order of ±0.5 mm are acceptable, for example. The interval J between the upper row and the lower row is about 0.2 mm. With regard to spacing among rows, differences on the order of ±0.3 mm are acceptable, for example.

As depicted in FIG. **5**, with the ink cartridge **100** attached completely within the holder **4**, the terminals **210-290** of the board **200** are electrically connected to a carriage circuit **500** via a contact mechanism **400** disposed on the holder **4**. The contact mechanism **400** shall be described briefly making reference to FIGS. **6A-B**.

FIGS. **6A-B** show schematics of the construction of the contact mechanism **400**. The contact mechanism **400** has multiple slits **401**, **402** of two types that differ in depth, formed in alternating fashion at substantially constant pitch in correspondence with the terminals **210-290** on the board **200**. Within each slit **401**, **402** there fits a contact forming member **403**, **404** endowed with electrical conductivity and resistance. Of the two ends of each contact forming member **403** and **404**, the end exposed to the inside of the holder is placed in resilient contact with a corresponding terminal among the terminals **210-290** on the board **200**. In FIG. **6A**, portions **410-490** which are the portions of the contact forming members **403** and **404** that contact the terminals **210-290** are shown. Specifically, the portions **410-490** that contact the terminals **210-290** function as apparatus-side terminals for electrically connecting the printing apparatus **1000** with the terminals **210-290**. The portions **410-490** that contact the terminals **210-290** shall hereinafter be termed apparatus-side terminals **410-490**. With the ink cartridge **100** attached to the holder **4**, the appa-

**11**

ratus-side terminals **410-490** respectively contact the contact portions CP of the terminals **210-290** described above (FIG. **3**A).

On the other hand, of the two ends of each contact forming member **403** and **404**, the end lying exposed on the exterior of the holder **4** is placed in resilient contact with a corresponding terminal among the terminals **510-590** furnished to the carriage circuit **500**.

The electrical arrangements of the ink cartridge **100** and the printing apparatus will now be described, focusing on the part relating to the ink cartridge **100**, with reference to FIG. **7** and FIG. **8**. FIG. **7** shows a brief diagram of the electrical arrangement of the ink cartridge and the printing apparatus. FIG. **8** shows a brief diagram of the electrical arrangement, focusing on the cartridge detection/short detection circuit.

First, the electrical arrangement of the ink cartridge **100** shall be described. Of the terminals of the board **200** described with reference to FIG. **3**, the ground terminal **220**, the power supply terminal **230**, the reset terminal **260**, the clock terminal **270** and the data terminal **280** are electrically connected to the memory **203**. The memory **203** is, for example, EEPROM comprising serially accessed memory cells, and performing data read/write operations in sync with a clock signal. The ground terminal **220** is grounded via a terminal **520** on the printing apparatus **1000** side. The reset terminal **260** is electrically connected to a terminal **560** of the carriage circuit **500**, and is used to supply a reset signal RST to the memory **203** from the carriage circuit **500**. The clock terminal **270** is electrically connected to a terminal **570** of the carriage circuit **500**, and is used to supply the clock signal CLK to the memory **203** from the carriage circuit **500**. The data terminal **280** is electrically connected to a terminal **580** of the carriage circuit **500**, and is used for exchange of data signals SDA between the carriage circuit **500** and the memory **203**.

Of the terminals of the board **200** described with reference to FIG. **3**, either the first short detection terminal **210**, the second short detection terminal **240**, or both are electrically connected with the ground terminal **220**. In the example depicted in FIG. **7**, it will be apparent that the first short detection terminal **220** is electrically connected to the ground terminal **220**. The first short detection terminal **210** and the second short detection terminal **240** are electrically connected respectively to the terminals **510**, **540** of the carriage circuit **500**, and used for cartridge detection and short detection, described later.

In the embodiment, a piezoelectric element is used as the sensor **104**. The remaining ink level can be detected by applying driving voltage to the piezoelectric element to induce the piezoelectric element to vibrate through the inverse piezoelectric effect, and measuring the vibration frequency of the voltage produced by the piezoelectric effect of the residual vibration. Specifically, this vibration frequency represents the characteristic frequency of the surrounding structures (.e.g. the housing **101** and ink) that vibrate together with the piezoelectric element. The characteristic frequency changes depending on the amount of ink remaining within the ink cartridge, so the remaining ink level can be detected by measuring this vibration frequency. Of the terminals of the board **200** described with reference to FIG. **3**, the second sensor drive terminal **290** is electrically connected to one electrode of the piezoelectric element used as the sensor **104**, and the first sensor drive terminal **250** is electrically connected to the other electrode. These terminals **250**, **290** are used for exchange of sensor driving voltage and output signals from the sensor **104**, between the carriage circuit **500** and the sensor **104**.

**12**

The carriage circuit **500** comprises a memory control circuit **501**, a cartridge detection/short detection circuit **502**, and a sensor driving circuit **503**. The memory control circuit **501** is a circuit connected to the terminals **530**, **560**, **570**, **580** of the carriage circuit **500** mentioned above, and used to control the memory **203** of the ink cartridge **100** to perform data read/write operations. The memory control circuit **501** and the memory **203** are low-voltage circuits driven at relatively low voltage (in the embodiment, a maximum of about 3.3 V). The memory control circuit **501** can employ a known design, and as such need not be described in detail here.

The sensor driving circuit **503** is a circuit connected to the terminals **590** and **550** of the carriage circuit **500**, and used to control the driving voltage output from these terminals **590** and **550** to drive the sensor **104**, causing the sensor **104** to detect the remaining ink level. As will be described later, the driving voltage has a generally trapezoidal shape, and contains relatively high voltage (in the embodiment, about 36 V). Specifically, the sensor driving circuit **503** and the sensor **104** are high-voltage circuits using relatively high voltage via the terminals **590** and **550**. The sensor driving circuit **503** is composed of a logic circuit for example, but need not be described in detail herein.

The cartridge detection/short detection circuit **502**, like the memory control circuit **501**, is a low-voltage circuit driven using relatively low voltage (in the embodiment, a maximum of about 3.3V). As depicted in FIG. **8**, the cartridge detection/short detection circuit **502** comprises a first detection circuit **5021** and a second detection circuit **5022**. The first detection circuit **5021** is connected to the terminal **510** of the carriage circuit **500**. The first detection circuit **5021** has a cartridge detection function for detecting whether there is contact between the terminal **510** and the first short detection terminal **210** of the board **200**, and a short detection function for detecting shorting of the terminal **510** to the terminals **550** and **590** which output high voltage.

To describe in more specific terms, the first detection circuit **5021** has a reference voltage V_ref1 applied to one end of two series-connected resistors R**2**, R**3**, with the other end being grounded, thereby maintaining the potential at point P**1** and P**2** in FIG. **4** at V_ref1 and V_ref2, respectively. Herein V_ref1 shall be termed the short detection voltage, and V_ref2 shall be termed the cartridge detection voltage. In the embodiment, the short detection voltage V_ref1 is set to 6.5 V, and the cartridge detection voltage V_ref2 is set to 2.5 V. These values are established by means of the circuits, and are not limited to the values given herein.

As depicted in FIG. **8**, the short detection voltage V_ref1 (6.5 V) is input to the negative input pin of a first Op-Amp OP**1**, while the cartridge detection voltage V_ref2 (2.5 V) is input to the negative input pin of a second Op-Amp OP**2**. The potential of the terminal **510** is input to the positive input pins of the first Op-Amp OP**1** and the second Op-Amp OP**2**. These two Op-Amps function as a comparator, outputting a High signal when the potential input to the negative input pin is higher than the potential input to the positive input pin, and conversely outputting a Low signal when the potential input to the negative input pin is lower than the potential input to the positive input pin.

As depicted in FIG. **8**, the terminal **510** is connected to a 3.3 V power supply VDD 3.3 via a transistor TR**1**. By means of this arrangement, if terminal **510** is free e.g. there is no contact with terminal **510**, the potential of the terminal **510** will be set at about 3 V. As noted, when the ink cartridge **100** is attached, the terminal **510** comes into contact with the first short detection terminal **210** of the board **200** described previously. Here, as depicted in FIG. **7**, with the first short detection terminal

**13**

210 and the ground terminal **220** electrically connected (shorted) in the board **200**, when the terminal **510** comes into contact with the first short detection terminal **210** (herein referred to as being in contact), the terminal **510** is electrically continuous with the grounded terminal **520**, and the potential of the terminal **510** drops to 0 V.

Consequently, with the terminal **510** free, a High signal from the second Op-Amp OP**2** is output as the cartridge detection signal CS**1**. With the terminal **510** in contact, a Low signal from the second Op-Amp OP**2** is output as the cartridge detection signal CS**1**.

On the other hand, if the terminal **510** is shorted to the adjacent terminal **550**, there are instances in which the sensor driving voltage (45 V max) will be applied to the terminal **510**. As shown in FIG. **8**, when voltage greater than the short detection voltage V_ref**1** (6.5 V) is applied to the terminal **510** due to shorting, a High signal from the Op-Amp OP**1** will be output to an AND circuit AA.

As shown in FIG. **8**, a short detection enable signal EN is input from the main control circuit **40** to the other input pin of the AND circuit AA. As a result, only during the time interval that a High signal is input as the short detection enable signal EN, the first detection circuit **5021** outputs the High signal from the Op-Amp OP**1** as a short detection signal AB**1**. That is, execution of the short detection function of the first detection circuit **5021** is controlled by means of the short detection enable signal EN of the main control circuit **40**. The short detection signal AB**1** from the AND circuit AA is output to the main control circuit **40**, as well as being output to the base pin of the transistor TR**1** via resistance R**1**. As a result, by means of the transistor TR**1** it is possible to prevent high voltage from being applied to the power supply VDD 3.3 via the terminal **510** when a short is detected (when the short detection signal AB**1** is HI).

The second detection circuit **5022** has a cartridge detection function for detecting whether there is contact between the terminal **540** and the second short detection terminal **240** of the board **200**, and a short detection function for detecting shorting of the terminal **540** to the terminals **550** and **590** which output high voltage. Since the second detection circuit **5022** has the same arrangement as the first detection circuit **5021**, a detailed illustration and description need not be provided here. Hereinafter, the cartridge detection signal output by the second detection circuit **5022** shall be denoted as CS**2**, and the short detection signal as AB**2**.

An arrangement of the carriage circuit **500** corresponding to a single ink cartridge **100** has been described above. In the embodiment, since four ink cartridges **100** are attached, four of the cartridge detection/short detection circuits **502** described above will be provided, at each of the attachment locations for the four ink cartridges **100**. While only a single sensor driving circuit **503** is provided, and a single sensor driving circuit **503** is connectable to each of the sensors **104** of the ink cartridges **100** attached at the four attachment locations by means of a switch(not shown). The memory control circuit **501** is a single circuit responsible for processes relating to the four ink cartridges.

The main control circuit **40** is a computer of known design comprising a central processing unit (CPU), a read-only memory (ROM), and a random access memory (RAM). As noted, the main control circuit **40** controls the entire printer; in FIG. **8**, however, only those elements necessary for description of the embodiment are selectively illustrated, and the following description refers to the illustrated arrangement. The main control circuit **40** comprises a cartridge determining module M**50** and a remaining ink level determining module M**60**. On the basis of the received cartridge detection

**14**

signals CS**1**, CS**2**, the cartridge determining module M**50** executes a cartridge determination process, described later. The remaining ink level determining module M**60** controls the sensor driving circuit **503**, and executes a remaining ink level detection process, described later.

Cartridge Determination Process:

The cartridge determination process executed by the cartridge determining module M**50** of the main control circuit **40** will be described with reference to FIG. **9** and FIG. **10**. FIG. **9** shows a flowchart depicting the processing routine of the cartridge determination process. FIGS. **10**A-C show illustrations depicting three types of terminal lines on the board **200**.

Before turning to the cartridge determination process, the board **200** will be described further with reference to FIG. **10**. The board **200** mentioned previously comes in three types, depending on the wiring pattern of the first short detection terminal **210**, the second short detection terminal **240**, and the ground terminal **220**. These three types are designated respectively as Type A, Type B, and Type C. As depicted in FIG. **10**A, the Type A board **200** is arranged with the first short detection terminal **210** and the ground terminal **220** electrically connected by a conducting line **207**, while the second short detection terminal **240** and the ground terminal **220** are not electrically connected. As depicted in FIG. **10**B, the Type B board **200** is arranged with both the first short detection terminal **210** and the second short detection terminal **240** electrically connected with the ground terminal **220** by a conducting line **207**. As depicted in FIG. **10**C, the Type C board **200** is arranged with the second short detection terminal **240** and the ground terminal **220** electrically connected by a conducting line **207**, while the first short detection terminal **210** and the ground terminal **220** are not electrically connected. A board **200** of predetermined type, selected with reference to ink type or ink quantity for example, is disposed on the ink cartridge **100**. Specifically, depending on the quantity of ink contained in the ink cartridge **100**, a Type A board **200** could be disposed on an L size cartridge containing a large quantity of ink; a Type B board **200** could be disposed on an M size cartridge containing a standard quantity of ink; and a Type C board **200** could be disposed on an S size cartridge containing a small quantity of ink.

The cartridge determining module M**50** of the main control circuit **40** constantly receives from the cartridge detection/short detection circuit **502** the cartridge detection signals CS**1**, CS**2** for each of the four attachment locations of the holder **4**, and using these signals executes the cartridge determination process for each of the attachment locations.

When the cartridge determining module M**50** initiates the cartridge determination process for a selected attachment location, the cartridge determining module M**50** first ascertains whether the cartridge detection signal CS**1** from the cartridge detection/short detection circuit **502** in the selected attachment location is a Low signal (Step S**102**). Next, the cartridge determining module M**50** ascertains whether the cartridge detection signal CS**2** in the selected attachment location is a Low signal (Step S**104** or S**106**). If as a result the cartridge detection signals CS**1** and CS**2** are both Low signals (Step S**102**: YES and Step S**104**: YES), the cartridge determining module M**50** decides that the ink cartridge **100** attached to the selected attachment location is furnished with the Type B board **200** (Step S**108**).

Similarly, the cartridge determining module M**50**, in the event that the cartridge detection signal CS**1** is a Low signal and the cartridge detection signal CS**2** is a High signal (Step S**102**: YES and Step S**104**: NO), decides that the ink cartridge is furnished with the Type A board **200** (Step S**110**); or in the event that the cartridge detection signal CS**1** is a High signal

15

and the cartridge detection signal CS**2** is a Low signal (Step S**102**: NO and Step S**104**: YES), decides that the ink cartridge is furnished with the Type C board **200** described above (Step S**112**).

In the event that both the cartridge detection signals CS**1** and CS**2** are High signals Step S**102**: NO and Step S**104**: NO), the cartridge determining module M**50** decides that no cartridge is attached to the selected attachment location (Step S**114**). In this way, the cartridge determining module M**50** determines whether an ink cartridge **100** is attached, and if so what type, for each of the four attachment locations.

Remaining Ink Level Detection Process:

The remaining ink level detection process executed by the remaining ink level determining module M**60** of the main control circuit **40** will now be described with reference to FIG. **11** and FIGS. **12**A-C. FIG. **11** shows a flowchart depicting the processing routine of the remaining ink level detection process. FIGS. **12**A-C show timing charts depicting temporal change in the shorting-detection enable signal and sensor voltage during execution of the remaining ink level detection process;

The remaining ink level determining module M**60** of the main control circuit **40**, in the event that the remaining ink level in the ink cartridge **100** attached at any of the attachment locations of the holder **4** is to be detected, first sets to High the short detection enable signal EN to all of the cartridge detection/short detection circuits **502** (Step S**202**). As a result, the short detection function is enabled in all of the cartridge detection/short detection circuits **502**, and if voltage above the reference voltage V_ref**1** (6.5 V) is applied to the aforementioned terminal **520** and terminal **540**, are able to output High signals as the short detection signals AB**1**, AB**2**. In other words, a state in which the short detection enable signal EN are High signals is a state in which shorting of the terminal **510** or terminal **540** to the terminal **550** or terminal **590** is monitored.

Next, the remaining ink level determining module M**60** instructs the sensor driving circuit **503** to output driving voltage from the terminal **550** or terminal **590** to the sensor **104**, and detect the remaining ink level output (Step S**204**). To describe in more specific terms, when the sensor driving circuit **503** receives an instruction signal from the remaining ink level determining module M**60**, the sensor driving circuit **503** outputs driving voltage from either the terminal **550** or the terminal **590**, the voltage being applied to the piezoelectric element which constitutes the sensor **104** of the ink cartridge **100**, charging the piezoelectric element and causing it to distort by means of the inverse piezoelectric effect. The sensor driving circuit **503** subsequently drops the applied voltage, whereupon the charge built up in the piezoelectric element is discharged, causing the piezoelectric element to vibrate. In FIG. **12**, the driving voltage is the voltage shown during time interval T1. As depicted in FIG. **12**, the driving voltage fluctuates between the reference voltage and the maximum voltage Vs in such a way as to describe a trapezoidal shape. The maximum voltage Vs is set to relatively high voltage (e.g. about 36 V). Via the terminal **550** of the terminal **590**, the sensor driving circuit **503** detects the voltage produced by the piezoelectric effect as a result of vibration of the piezoelectric element (in FIG. **12** depicted as the voltage during time interval T**2**), and by measuring the vibration frequency thereof detects the remaining ink level. Specifically, this vibration frequency represents the characteristic frequency of the surrounding structures (the housing **101** and ink) that vibrate together with the piezoelectric element, and changes depending on the amount of ink remaining within the ink cartridge **100**, so the remaining ink level can be detected

16

by measuring this vibration frequency. The sensor driving circuit **503** outputs the detected result to the remaining ink level determining module M**60** of the main control circuit **40**.

When the remaining ink level determining module M**60** receives the detected result from the sensor driving circuit **503**, the remaining ink level determining module M**60** brings the short detection enable signal EN, which was previously set to a High signal in Step S**202**, back to a Low signal (Step S**206**), and terminates the process. In this process, the interval that the remaining ink level is being detected is a state in which the short detection enable signal EN is set to a High signal to enable short detection. In other words, remaining ink level is detected while the occurrence of shorting is being monitored by the cartridge detection/short detection circuit **502**.

Process when Shorting is Detected

The process carried out in the event that, during execution of detection of the remaining ink level (Step S**204**), the remaining ink level determining module M**60** receives a High signal as the short detection signal AB**1** or AB**2**, e.g. shorting is detected shall be described here. In FIG. **11**, a flowchart of the interrupt processing routine when shorting is detected is shown as well. When the terminal **510** or the terminal **540** shorts to the terminal that is outputting the sensor driving voltage of the terminals **550** and **590**, the sensor driving voltage will be applied to the shorting terminal **510** or terminal **540**. Thereupon, since the short detection enable signal EN is currently set to High, at the instant that the sensor driving voltage goes above the short detection voltage V_ref**1** (6.5 V), a High signal will be output as the short detection signals AB**1**, AB**2** from the cartridge detection/short detection circuit **502**. When the remaining ink level determining module M**60** receives either of these short detection signals AB**1**, AB**2**, the remaining ink level determining module M**60** suspends detection of remaining ink level, and executes the interrupt processing when shorting is detected.

When the interrupt processing is initiated, the remaining ink level determining module M**60** immediately instructs the sensor driving circuit **503** to suspend the output of sensor driving voltage (Step S**208**).

Next, the remaining ink level determining module M**60**, without carrying out remaining ink level detection process to its conclusion, brings the short detection enable signal EN back to a Low signal (Step S**206**) to terminate the process. For example, the main control circuit **40** may take some countermeasure, such as notifying the user of the shorting.

FIG. **12**A depicts change of the detection enable signal EN through time. FIG. **12**B depicts sensor voltage in the event that neither the terminal **510** nor the terminal **540** is shorting to the terminal that outputs the sensor driving voltage of the terminals **550** and **590**, so that the remaining ink level detection process is being executed normally. FIG. **12**C depicts sensor voltage in the event that the terminal **510** or the terminal **540** is shorting to the terminal that, of the terminals **550** and **590**, outputs the sensor driving voltage.

As depicted in FIG. **12**A, during execution of the remaining ink level detection process, the detection enable signal EN is a High signal. As shown in FIG. **12**B, in the normal state (no shorting), after high voltage Vs has been applied to the sensor **104**, the applied voltage drops, and subsequently vibration voltage is produced through the piezoelectric effect. In the embodiment, Vs is set at 36 V.

As depicted in FIG. **12**C, on the other hand, in the abnormal state (shorting), the sensor voltage drops at the instant that it goes above the short detection voltage V_ref**1** (6.5 V). This is due to the fact that, at the instant that the sensor voltage goes above the short detection voltage V_ref**1** (6.5 V), a High

**17**

signal is output as the short detection signal AB**1** or AB**2** from the cartridge detection/short detection circuit **502** to the remaining ink level determining module M**60**, and the remaining ink level determining module M**60** receiving this signal immediately drops the sensor driving voltage.

FIG. **13** shows an illustration of a scenario of shorting. Here, the likely scenario for shorting to other terminals by the terminals **550** and **590** which output the sensor driving voltage is, for example, the case depicted in FIG. **13**, in which an electrically conductive ink drop S**1** or a water drop S**2** formed by condensation has become deposited on the board **200** of the ink cartridge **100**, bridging the gap between the first sensor drive terminal **250** or the second sensor drive terminal **290** and another terminal or terminals on the board **200**, producing shorting. For example, ink drop S**1** that has adhered to the surface of the carriage **3** or ink supply needle **6** disperses and adheres as shown in FIG. **13** by the motion of attaching or detaching of ink cartridge **100**. In this instance, when the ink cartridge **100** is attached, the terminal **550** that outputs the sensor driving voltage, for example, will short to another terminal **510**, **520**, or **560** of the carriage circuit **500** via the first sensor drive terminal **250** and the terminals (FIG. **13**: terminals **210**, **220**, **260**) bridged by the ink drop S**1** to the sensor drive terminal **250**. Or, the terminal **590** that outputs the sensor driving voltage will short to another terminal **540** of the carriage circuit **500** via the second sensor drive terminal **290** and the second short detection terminal **240** (FIG. **13**) bridged by the water drop S**2** to the second sensor drive terminal **290**, for example. Such a shorting is caused by various factor as well as the adhesion of the ink drop. For example, the shorting may be caused by trapping electrically conducting object, for example, paper clip on carriage **3**. The shorting also may be caused by adhesion to terminals of the electrically conducting material, for example, skin oil of user.

As mentioned previously with reference to FIG. **3**, in the ink cartridge **100** pertaining to the embodiment the first sensor drive terminal **250** and the second sensor drive terminal **290** which apply the driving voltage to the sensor are arranged at the two ends of the terminal group, so the number of adjacent terminals is small. As a result, the likelihood of the first sensor drive terminal **250** and the second sensor drive terminal **290** shorting to other terminals is low.

On the board **200**, if the first sensor drive terminal **250** should short to the adjacent first short detection terminal **210**, the shorting will be detected by the aforementioned cartridge detection/short detection circuit **502**. For example, shorting of the first sensor drive terminal **250** to another terminal caused by the ink drop S**1** infiltrating from the first sensor drive terminal **250** side will be detected instantly and the output of sensor driving voltage will be suspend, preventing or reducing damage to the memory **203** and the printing apparatus **1000** circuits (the memory control circuit **501** and the cartridge detection/short detection circuit **502**) caused by the shorting.

Also, the first short detection terminal **210** is adjacent to the first sensor drive terminal **250** and situated closest to the first sensor drive terminal **250**. Consequently, in the event that the first sensor drive terminal **250** should short to another terminal or terminals due to the ink drop S**1** or the water drop S**2**, there is a high likelihood that the first sensor drive terminal **250** will short to the first short detection terminal **210** as well. Consequently, shorting of the first sensor drive terminal **250** to another terminal can be detected more reliably.

In addition to detecting shorting, the first short detection terminal **210** is also used by the cartridge detection/short detection circuit **502** to determine whether an ink cartridge **100** is attached, as well as to determine the type of attached

**18**

ink cartridge **100**. As a result, the number of terminals on the board **200** can be kept down, and it becomes possible to reduce the number of board **200** manufacturing steps and the number of parts for the board **200**.

Similarly, if the second sensor drive terminal **290** should short to the second short detection terminal **240**, the short will be detected by the cartridge detection/short detection circuit **502**. Consequently, shorting of the second sensor drive terminal **290** to another terminal caused by the ink drop S**1** or the water drop S**2** infiltrating from the second sensor drive terminal **290** side can be detected instantly. As a result, damage to the circuits of the memory **203** and the printing apparatus **1000** caused by shorting can be prevented or reduced. Similarly, the second short detection terminal **240** is the terminal situated closest to the second sensor drive terminal **290**. Consequently, in the event that the second sensor drive terminal **290** should short to another terminal or terminals due to the ink drop S**1** or the water drop S**2**, there is a high likelihood that the second sensor drive terminal **290** will short to the second short detection terminal **240** as well. Consequently, shorting of the second sensor drive terminal **290** to another terminal can be detected more reliably.

The first sensor drive terminal **250** and the first short detection terminal **210** on the one hand, and the second sensor drive terminal **290** and the second short detection terminal **240** on the other, are situated at the ends of the terminal group so that the other terminals (**220**, **230**, **260**-**270**) lie between them. Consequently, if foreign matter (the ink drop S**1**, water drop S**2** etc.) should infiltrate from either side as indicated by the arrows in FIG. **13**, this infiltration can be detected before it infiltrates as far as the other terminals (**220**, **230**, **260**-**270**). Consequently, damage to the circuits of the memory **203** and the printing apparatus **1000** due to infiltration of foreign matter can be prevented or reduced.

The first sensor drive terminal **250** and the second sensor drive terminal **290** are arranged in the row on the insertion direction R side (lower row). As a result, since the terminals **250**, **290** to which sensor driving voltage including high voltage is applied are situated to the back in the insertion direction, there is less likelihood that ink drops or foreign matter (e.g. a paperclip) will infiltrate to the location of these terminals **250**, **290**. As a result, damage to the circuits of the memory **203** and the printing apparatus **1000** caused by infiltration of foreign matter can be prevented or reduced.

The terminal group of the board **200** is arranged in a staggered pattern. As a result, unwanted contact of the terminals of the ink cartridge **100** with the terminals of the printing apparatus **1000** (the contact forming members **403**, **404** mentioned previously) during the attachment operation can be prevented or reduced.

B. Variations:

Variations of the board **200** mounted to the ink cartridge **100** shall be described with reference to FIGS. **14**A-**16**B. FIGS. **14**A-D show first diagrams depicting boards pertaining to variations. FIGS. **15**A-C show second diagrams depicting boards pertaining to variations. FIGS. **16**A-B show third diagrams depicting boards pertaining to variations.

Variation 1:

On the board **200**b depicted in FIG. **14**A, the first short detection terminal **210** is similar to the first short detection terminal **210** of the board **200** of the embodiment, but has at its lower end an extended portion that reaches into proximity with the lower edge of the lower row. The extended portion is positioned between the first sensor drive terminal **250** and the reset terminal **260** of the lower row. As a result, for example, even in the event of adhesion of an ink drop S**3** as depicted in FIG. **14**(a), shorting of the extended portion of the short

**19**

detection terminal **210** to the first sensor drive terminal **250** will be detected. Like this, when the first sensor drive terminal **250** and terminal other than the first short detection terminal **210** are shorting, there is a high possibility that the first sensor drive terminal **250** and the first short detection terminal **210** are shorting and the sensor driving voltage is suspended. Accordingly, problems caused by shorting of the first sensor drive terminal **250** to another terminal (in the example of FIG. **14**A, the reset terminal **260**) can be prevented or reduced.

As shown in FIG. **14**A, the second short detection terminal **240** of the board **200**b is also similar in shape to the first short detection terminal **210** mentioned above, and shorting of the second sensor drive terminal **290** to another terminal will also be detected more reliably.

Variation 2:

The board **200**c depicted in FIG. **14**B has, in addition to the arrangement of the board **200**b described above, also has an extended portion located at the upper side of the first sensor drive terminal **250**, and reaching into proximity with the upper edge of the upper row. As a result, even in the event of adhesion of an ink drop S4 as depicted in FIG. **14**(b), shorting of the short detection terminal **210** to the extended portion of the first sensor drive terminal **250** will be detected. Like this, when the first sensor drive terminal **250** and terminal other than the first short detection terminal **210** are shorting, there is a high possibility that the first sensor drive terminal **250** and the first short detection terminal **210** are shorting and the sensor driving voltage is suspended. Accordingly, problems caused by shorting of the first sensor drive terminal **250** to another terminal can be prevented or reduced.

As shown in FIG. **14**B, the second sensor drive terminal **290** of the board **200**c is also similar in shape to the first sensor drive terminal **250** mentioned above, and infiltration of an ink drop from the end, at the end at which the second sensor drive terminal **290** is situated, can be detected instantly.

Variation 3:

The board **200**d depicted in FIG. **14**C differs from the board **200** of the embodiment in that there is no second short detection terminal **240**. In the case of the Type A board **200** depicted in FIG. **10**A, the second short detection terminal **240** does not carry out detection of contact by means of the cartridge detection/short detection circuit **502** (since there is no shorting to the ground terminal **220**). Consequently, in the case of the Type A board **200**, the second short detection terminal **240** is used for short detection only and accordingly can be dispensed with. In this case as well, since the first short detection terminal **210** is at the location closest to the first sensor drive terminal **250**, when the first sensor drive terminal **250** and terminal other than the first short detection terminal **210** are shorting, there is a high possibility that the first sensor drive terminal **250** and the first short detection terminal **210** are shorting and the sensor driving voltage is suspended. Infiltration of an ink drop to second sensor drive terminal **290** side will also be detected to a certain extent. In FIG. **14**C, the symbol CP represents the location of contact with the contact forming member **403** that would contact the second short detection terminal **240** if the second short detection terminal **240** were present (i.e. the contact forming member **403** corresponding to the terminal **540** of the carriage circuit **500**). Even in the case that the second short detection terminal **240** is absent, if a shorting should occur between the second sensor drive terminal **290** and the contact forming member **403** corresponding to the terminal **540** of the carriage circuit **500** due to an ink drop S5, infiltration of the ink drop S5 will be detected. Similarly, in the case of a Type C board **200**, the first short detection terminal **210** may be dispensed with.

**20**

Variation 4:

On the board **200**e depicted in FIG. **14**D, the first sensor drive terminal **250** and the first short detection terminal **210** have elongated shape reaching from the vicinity of the upper edge of the upper row to the vicinity of the lower edge of the lower row. The terminals of this shape, as the contact locations are indicated by the symbol CP in FIG. **14**D, can contact the corresponding contact forming portions **403** arranged in a staggered pattern. In the case of the board **200**e, like the board **200**c described previously, even if an ink drop S**6** should become deposited for example, shorting between the extended portions of the first short detection terminal **210** and the first sensor drive terminal **250** will be detected. Like this, first short detection terminal **210** is located between first sensor drive terminal **250** and terminal other than the first short detection terminal **210**. Accordingly, when the first sensor drive terminal **250** and terminal other than the first short detection terminal **210** are shorting, there is a high possibility that the first sensor drive terminal **250** and the first short detection terminal **210** are shorting and the sensor driving voltage is suspended.

The second sensor drive terminal **290** and the second short detection terminal **240** of the board **200**e have shape similar to the first sensor drive terminal **250** and the first short detection terminal **210** described above. Accordingly, when the second sensor drive terminal **290** and terminal other than the second short detection terminal **240** are shorting, there is a high possibility that the second sensor drive terminal **290** and the second short detection terminal **240** are shorting. As a result, the possibility preventing or reducing the problems caused by shorting of the sensor drive terminal **250**, **290** to another terminal becomes higher.

Variation 5:

On the board **200**f depicted in FIG. **15**A, the terminal which corresponds to the first short detection terminal **210** and the ground terminal **220** in the board **200** pertaining to the embodiment is an integral terminal **215** wherein these two terminals are integrally formed as a single member. This board **200**f can be used in place of the Type A or Type B board **200** (FIG. **10**) whose first short detection terminal **210** and ground terminal **220** are shorted. With the board **200**f, the need is obviated for a line between the first short detection terminal **210** and the ground terminal **220**, which was required in the case of in the board **200** pertaining to the embodiment, so the board **200** requires fewer process steps and fewer parts.

Variation 6:

On the board **200**g depicted in FIG. **15**B, the terminals **210**-**240** of the upper row each have shape similar to the first short detection terminal **210** of the board **200**b described previously. Specifically, each of the terminals **210**-**240** has an extended portion situated at the lower edge of the corresponding terminal of the board **200** pertaining to the embodiment and reaching into proximity with the lower edge of the lower row. The terminals **250**-**290** of the lower row of the board **200**g are similar in shape to the first sensor drive terminal **250** of the board **200**c described earlier. Specifically, the each of the terminals **250**-**290** has an extended portion situated at the upper edge of the corresponding terminal of the board **200** pertaining to the embodiment and reaching into proximity with the upper edge of the upper row.

As a result, the terminals **210**-**290** of the board **200**g are arranged so as to form a terminal group composed of a single row of terminals of generally oar shape of in mutually different arrangement, rather than being arranged in two rows. The first sensor drive terminal **250** and the second sensor drive terminal **290** to which the high-voltage sensor driving voltage is applied are positioned at the two ends of the single row of

21

the terminal group, with the first short detection terminal **210** and the second short detection terminal **240** respectively arranged adjacently inward from the first sensor drive terminal **250** and the second sensor drive terminal **290**.

With the board **200g**, an ink drop or foreign matter infiltrating from either end can be detected immediately at the point in time that shorting occurs between the first sensor drive terminal **250** and the short detection terminal **210**, or between the second sensor drive terminal **290** and the second short detection terminal **240**. In the event that the first sensor drive terminal **250** or the second sensor drive terminal **290** should short to another terminal, in the case where the shorting is due to an ink drop or the like, the likelihood is extremely high that shorting between the first sensor drive terminal **250** and the short detection terminal **210**, or between the second sensor drive terminal **290** and the second short detection terminal **240**, will occur at the same time. Consequently, shorting of the first sensor drive terminal **250** or the second sensor drive terminal **290** to another terminal can be detected reliably. As a result, damage to the memory **203** and the printing apparatus **1000** circuits (the memory control circuit **501** and the cartridge detection/short detection circuit **502**) caused by the shorting can be prevented or minimized.

Variation 7:

On the board **200h** depicted in FIG. **15**C, the terminals **210**-**290** have elongated shape extending over a distance equivalent to two rows of the board **200** pertaining to the embodiment, in a manner similar to the first sensor drive terminal **250** and the first short detection terminal **210** of the board **200e** described previously. The terminals of this shape, as the contact locations are indicated by the symbol cp in FIG. **15**C, can contact the corresponding contact forming portions **403** arranged in a staggered pattern.

In the board **200h**, the terminals **210**-**290** are arranged so as to form a single row in the orthogonal direction to the insertion direction R, in a manner similar to the board **200g** described above. Also, like the board **200g**, the first sensor drive terminal **250** and the second sensor drive terminal **290** to which the high-voltage sensor driving voltage is applied are positioned at the two ends of the single row of terminals, with the first short detection terminal **210** and the second short detection terminal **240** respectively arranged adjacently inward from the first sensor drive terminal **250** and the second sensor drive terminal **290**. As a result, the board **200h** affords advantages analogous to those of the board **200g** described above.

Variation 8:

The first short detection terminal **210** of the board **200i** depicted in FIG. **16**A has a shape that is longer on the left side in the drawing, as compared to the first short detection terminal **210** of the board **200** pertaining to the embodiment. Additionally, the first short detection terminal **210** of the board **200i** has an extended portion reaching from the left edge portion to the vicinity of the lower edge of the lower row. The extended portion is situated to the left of the first sensor drive terminal **250** in the lower row. In other words, the extended portion is disposed to further from the middle of the terminal group in a direction substantially orthogonal to the insertion direction R than the first sensor drive terminal **250**. In this case, whereas viewed in terms of the terminal as a whole, the first short detection terminal **210** is situated outwardly (to the left side) of the first sensor drive terminal **250**, when viewed in terms of the contact portion CP of the terminal, of the contact portions CP of all of the terminals **210**-**290** the contact portion CP of the first sensor drive terminal **250** is the one situated at the outermost position (left side), in the same manner as in the embodiment. Also, shorting between the first

22

sensor drive terminal **250** and the first short detection terminal **210** that includes the contact portion CP adjacent to the contact portion CP of the first sensor drive terminal **250** is detected. Accordingly, the board **200i** pertaining to this variation affords advantages similar to the board **200** pertaining to the embodiment. Specifically, infiltration of an ink drop from the edge can be detected instantly, and damage to the circuits of the memory **203** and the printing apparatus **1000** can be prevented or minimized. Additionally, since the first short detection terminal **210** has the extended portion, the length of a first portion that is a portion adjacent to the circumferential edge of the first short detection terminal **210** among the circumferential edge of the first sensor drive terminal **250** becomes long. As shown in FIG. **16**B, the length of the first portion is longer than that of a second portion that is a portion adjacent to the circumferential edge of the reset terminal **260** among the among the circumferential edge of the first sensor drive terminal **250**. As a result, when the first sensor drive terminal **250** and terminal other than the first short detection terminal **210**, for example, the reset terminal **260** are shorting, there is a high possibility that the first sensor drive terminal **250** and the first short detection terminal **210** are shorting. Accordingly, the sensor driving voltage is suspended and problems caused by shorting of the first sensor drive terminal **250** to another terminal can be prevented or reduced with higher probability.

The first short detection terminal **210** of the board **200p** in FIG. **16**C has the longer extended portion than the first short detection terminal **210** of the board **200i**. As shown in FIG. **16**C, the extended portion of the first short detection terminal **210** of the board **200p** extends from upper left to lower right of the first sensor drive terminal **250** along the circumferential edge of the first sensor drive terminal **250**. As a result, the length of the first portion in the board **200p** is longer than that in the board **200i**. Accordingly, when the first sensor drive terminal **250** and terminal other than the first short detection terminal **210** are shorting, there is a higher possibility the sensor driving voltage is suspended and problems caused by shorting of the first sensor drive terminal **250** to another terminal can be prevented or reduced.

The first short detection terminal **210** of the board **200q** in FIG. **16**D has the longer extended portion than the first short detection terminal **210** of the board **200i** and **200p**. As shown in FIG. **16**D, the extended portion of the first short detection terminal **210** of the board **200q** extends from upper left through lower to upper right of the first sensor drive terminal **250** along the circumferential edge of the first sensor drive terminal **250**. In other words, the first short detection terminal **210** is formed so as to surround the first sensor drive terminal **250** completely. As a result, the length of the first portion in the board **200q** is longer than that in the board **200i** and **200p**. Accordingly, when the first sensor drive terminal **250** and terminal other than the first short detection terminal **210** are shorting, there is a higher possibility the sensor driving voltage is suspended and problems caused by shorting of the first sensor drive terminal **250** to another terminal can be prevented or reduced.

As shown in FIGS. **16**A-C, board **200i**, **200p**, **200q** are added the direction in which the portion of the first short detection terminal **210** is located adjacently to a portion of the sensor drive terminal **250** by providing the extended portion of the first short detection terminal **210**. About board **200i**, the extended potion of the first short detection terminal **210** located adjacently to left border of the first sensor drive terminal **250** in a lateral direction toward an edge of the ink cartridge **100**, and the first short detection terminal **210** itself is located adjacently to upper border of the first sensor drive

US 8,454,116 B2

23

terminal **250** in opposite direction of the insertion direction R. Meanwhile, about board **200**p, in addition to above-mentioned two directions, the extended potion of the first short detection terminal **210** is located adjacently to lower border of the first sensor drive terminal **250** in the insertion direction R. Furthermore, about board **200**q, the extended potion of the first short detection terminal **210** is located adjacently to right border of the first sensor drive terminal **250** in lateral direction away from an edge of the ink cartridge **100**. In other words, about board **200**q, at least a potion of the first short detection terminal **210** is located adjacently to the first sensor drive terminal **250** in all direction.

When the first sensor drive terminal **250** and terminal other than the first short detection terminal **210** are shorting by ink drop or other object infiltrating from the direction in which the portion of the first short detection terminal **210** is located adjacently to the portion of the first sensor drive terminal **250**, there is a much high possibility that the first sensor drive terminal **250** and the first short detection terminal **210** are shorting. Accordingly, problems caused by shorting of the first sensor drive terminal **250** to another terminal by ink drop or other object infiltrating from such direction can be prevented or reduced with much high probability. In the present variations, the extended portion of the first short detection terminal **210** adds the direction in which the first short detection terminal **210** and the first sensor drive terminal **250** are adjacent each other, and prevents or reduces problems caused by shorting of the first sensor drive terminal **250** to another terminal with much high probability.

In the boards **200**i, **200**p, **200**q pertaining to this variation, only the first short detection terminal **210** on the left side is furnished with a structure having the extended portion described above, but it would be possible to furnish the second short detection terminal **240** on the right side with a structure having an extended portion, in addition to the first short detection terminal **210** or instead of the first short detection terminal **210**. In this case as well, there are afforded advantages analogous to those of the boards **200**i, **200**p, **200**q pertaining to this variation.

Variation 9:

The board **200**j depicted in FIG. **16**B, like the board **200**f described previously in Variation 5, has an integral terminal **215** wherein the first short detection terminal **210** and the ground terminal **220** in the board **200** pertaining to the embodiment are integrally formed as a single member. The integral terminal **215** of the board **200**j differs in shape from the integral terminal **215** of the board **200**f described previously. Specifically, the integral terminal **215** of the board **200**j, like the first short detection terminal **210** of the board **200**i described in Variation 8, has a shape elongated on the left side, and has an extended portion reaching from the left side portion to the vicinity of the lower edge of the lower row. In this case, advantages analogous to those of the board **200**i pertaining to Variation 8 are attained, while reducing the number of production steps and parts needed for the board.

In the embodiment and variations described hereinabove, all of the terminals are situated on the board **200**, but it is not necessary that all terminals be situated on the board **200**. For example, it would be acceptable for some of the terminals to be situated on the housing **101** of the ink cartridge **100**. By way of specific examples, Variation 10 and Variation 11 shall be described below with reference to FIGS. **17**A-**18**D. FIGS. **17**A-D show diagrams depicting the construction around boards of ink cartridges pertaining to variations. FIGS. **18**A-D show cross sections A-A to D-D in FIG. **17**.

24

Variation 10:

The board **200**k depicted in FIG. **17**A is furnished with seven terminals **210**-**240** and **260**-**280**, out of the nine terminals **210**-**290** furnished to the board **200** of the embodiment. Out of the nine terminals **210**-**290** furnished to the board **200** of the embodiment, the board **200**k lacks the first sensor drive terminal **250** and the second sensor drive terminal **290**. The board **200**k pertaining to this variation is furnished with notches NT**1** or NT**2** situated in zones that include the locations where the first sensor drive terminal **250** and the second sensor drive terminal **290** were disposed on the board **200** pertaining to the embodiment. The notches may have the shape indicated by the solid lines NT**1**, or the shape indicated by the broken lines NT**2**, in FIG. **17**A. Terminals **150** and **190** having function similar to the first sensor drive terminal **250** and the second sensor drive terminal **290** of the board **200** in the embodiment are arranged on the housing **101** situated to the rear of the board **200**k. Naturally, with the ink cartridge **100** attached to the holder **4**, these terminals **150** and **190** are situated at locations contacting the corresponding apparatus-side terminals **450** and **490**.

A-A cross section viewed in FIG. **17**A is depicted in FIG. **18**A. As shown in FIG. **18**A, a depressed portion DE, formed by a gap between the notch NT**1** of the board **200**k and the terminal **150**, is situated between the terminal **150** and the adjacent terminals **260**, **210** (in FIG. **18**A, the reset terminal **260** is shown). While omitted from the drawing, a similar depressed portion DE is situated between the terminal **190** and the adjacent terminals **280**, **240**.

According to this variation, the following advantages are afforded in addition to those analogous to the board **200** pertaining to the embodiment. If an ink drop or foreign matter should infiltrate from the end of the ink cartridge **100** pertaining to this variation, it will become trapped in the depressed portion DE arranged surrounding the terminal **150** or the terminal **190**, whereby shorting of the terminal **150** or the terminal **190** to another terminal due to an infiltrating ink drop or foreign matter can be further prevented or minimized.

Variation 11:

The board **200**m depicted in FIG. **17**B, rather than having the notches NT**1** or NT**2** pertaining to Variation 10, is instead furnished with through-holes HL situated at locations corresponding to the locations where the first sensor drive terminal **250** and the second sensor drive terminal **290** are situated on the board **200** pertaining to the embodiment. B-B cross section viewed in FIG. **17**B is depicted in FIG. **18**B. Other arrangements of the ink cartridge **100** pertaining to Variation 11 are the same as those of the ink cartridge **100** pertaining to Variation 10. In this variation as well, depressed portions DE are situated between the terminals **150**, **190** and the adjacent terminals. Accordingly, the ink cartridge **100** pertaining to this variation affords advantages analogous to those of the ink cartridge **100** pertaining to Variation 10.

Variation 12:

In the boards pertaining to the embodiment and variations, all terminals are connected to one of memory **203** and sensor **104**. However, the board may include dummy terminal that is not connected to any device. An example of such type of the board will be described as Variation 12 with reference to FIGS. **19**A-D. FIGS. **19**A-D show fourth diagrams depicting boards pertaining to variations.

The board **200**r includes the upper row formed by four terminals and the lower row formed by five terminals, as with the board **200** pertaining to the embodiment. Arrangement and function of the terminals **210**-**290** forming the upper row and the lower row of board **200**r is the same as that of the terminals of board **200** in the embodiment, so the detailed description thereof is omitted.

25

The board **200**r shown in FIG. **19**A has the dummy terminals DT between the upper row and the lower row and on the underside (the insertion direction side) of the lower row. The dummy terminals DT, for example, are made of the same material as other terminal **210**-**290**. FIG. **19**C shows E-E cross-section including dummy terminals DT. The dummy terminals DT has about the same thickness as other terminal **210**-**290**.

The dummy terminals DT are for scraping away foreign object adherent on the contact forming members **403**, for example, dust when ink cartridge **100** is attached or detached. This enables to prevent foreign object from being brought to the terminal to be contacted by contact forming member **403** (for example, the first sensor drive terminal **250** in FIG. **19**C) when ink cartridge **100** is attached or detached, and to prevent contact failure between the terminal and the contact forming member **403**.

The board **200**r shown in FIG. **19**A has the dummy terminal DT between the first sensor drive terminal **250** and the short detection terminal **210**, so you can't say first sensor drive terminal **250** is located adjacent to first short detection terminal **210**. However, the dummy terminals DT is not connected to memory **203** and not connected to the apparatusside terminals **510**-**590** on printing apparatus **1000**. Therefore, the shorting between the first sensor drive terminal **250** and the dummy terminals DT never cause any problem. Accordingly, the board **200**r can afford working effects analogous to the board **200** pertaining to the embodiment. That is to say, about the board **200**r, even if first sensor drive terminal **250** is not located adjacent to first short detection terminal **210** in a precise sense, at least a portion of the first short detection terminal **210** is arranged relative to at least a portion of the first sensor drive terminal **250**, without a terminal connected to memory **203** (terminal **220**, **230**, **260**-**280**) therebetween in at least one direction, for the detection of shorting between the first sensor drive terminal **250** and the first short detection terminal **210**. In such a case, the first sensor drive terminal **250** is substantially located adjacent to first short detection terminal **210**. Consequently, in the event that the first sensor drive terminal **250** should short to another terminal or terminals due to the ink drop or the water drop, there is a high likelihood that the first sensor drive terminal **250** will short to the short detection terminal **210** as well. As a result, the output of sensor driving voltage is suspend and damage to the circuits of the memory **203** and the printing apparatus **1000** caused by shorting can be prevented or reduced.

Variation 13:

The boards pertaining to the embodiment and variations, as shown in FIG. **2**, are described as the board mounted on a ink cartridge **100** used for "on carriage" type printer. However, the boards pertaining to the embodiment and variations may be mounted on an ink cartridge used for "off carriage" type printer. The ink cartridge used for "off carriage" type printer will be described below with reference to FIG. **20** and FIG. **21**. FIG. **20** shows a perspective view of the construction of the ink cartridge pertaining to the variation 13. FIG. **21** shows a picture of the ink cartridge pertaining to the variation 13 being attached to the printer.

Ink cartridge **100**b pertaining to Variation 13 is configured for installation in an "off carriage" type printer, i.e., one in which the ink cartridge is not installed on a carriage. Off carriage type printers are typically large-scale printers; the ink cartridges employed in such large-scale printers are typically larger in size than the ink cartridges employed in oncarriage type printers.

26

Ink cartridge **100**b comprises a housing **1001** containing ink, a board mounting portion **1050** for mounting board **200**, an ink feed orifice **1020** for supplying ink from a housing **1001** to the printer; an air feed orifice **1030** allowing intake of air into ink cartridge **100**b to allow smooth flow of ink; and guide portions **1040** for installation in the printer. The exterior dimensions of ink cartridge **100**b are such that the side thereof (i.e. the depth direction) extending perpendicular to the side on which the guide portions **1040**, etc. are formed (i.e. the width direction) is longer than the width direction. The relationship of the depth-wise dimension to the width-wise dimension of board **200**, expressed as a ratio of the two, is 15:1 or greater, for example.

As in the case of the above-mentioned embodiment, board **200** is positioned by means of boss hole **202** and boss slot **201**, and secured on the board mounting portion **1050** of ink cartridge **100**b.

As shown in FIG. **21**, when installing the ink cartridge **100**b in the printer, the guide portions **1040** of ink cartridge **100**b guide the guide pins **2040** on the printer so that the board mounting portion **1050**, ink feed orifice **1020**, and air feed orifice **1030** are appropriately contacted/coupled with a contact pin **2050**, ink feed orifice **2020**, and air feed orifice **2030** on the printer. The insertion direction of ink cartridge **100**b is indicated by arrow R in FIG. **21**. The insertion direction R on board **200** in this variation is the same as that in the abovementioned embodiment.

Ink cartridge **100**b used for off carriage type printer pertaining to this variation can prevent or reduce problems caused by shorting of the first sensor drive terminal **250** to another terminal as in the case of the embodiment and variations described above.

Variation 14:

Configuration of the ink cartridge for "on carriage" type printer shown in FIG. **2** is one example among many. Configuration of the ink cartridge for "on carriage" type printer is not limited to this. Other configuration of the ink cartridge for "on carriage" type printer shall be described as Variation 14 with reference to FIGS. **22**-**24**. FIG. **22** shows a first diagram of the construction of the ink cartridge pertaining to Variation 14. FIG. **23** shows a second diagram of the construction of the ink cartridge pertaining to variation 14. FIG. **24** shows a third diagram of the construction of the ink cartridge pertaining to Variation 14.

As shown in FIGS. **22** and **23**, the ink cartridge **100**b pertaining to Variation 14 includes housing **101**b, board **200** and sensor **104**b. On the bottom face of the housing **101**b, as with ink cartridge **100** in the embodiment, there is formed an ink supply orifice **110**b into which the ink supply needle inserts when ink cartridge **100**b is attached to the holder **4**b. The board **200** is mounted on the lower side (Z-axis plus direction side) of the front face (Y-axis plus direction side face) of the housing **101** as with ink cartridge **100** in the embodiment. Configuration of the board **200** is identical with the board **200** in the embodiment. The sensor **104**b is embedded in the side wall of the housing **101**b and used for detection of remaining ink level. Hook **120**b that engages with catching part of the holder **4**b when the ink cartridge **100**b is attached to the holder **4**b is mounted on the upper side of the front face of the housing **101**b. Hook **120**b fixates the Ink cartridge **100**b to the holder **4**b. The insertion direction when the ink cartridge **100**b is attached to the holder **4**b is a direction of arrow R in FIG. **22** (Z-axis plus direction) as with the ink cartridge **100** in the embodiment.

The housing **101**b has displacement preventers PO1-PO**4** on the side portion (x-axis direction side) of housing **101**b close to the board **200**. The displacement preventers PO1-

27

PO4 comes into contact with or close to a corresponding potion of the side wall of the holder 4*b* when the ink cartridge 100*b* is attached to the holder 4*b*. This prevents the ink cartridge 100*b* from moving in X-axial direction from its ideal position on the holder 4*b*. Specifically, the displacement preventers PO1 and PO2 are located on the upper side of the board 200 and prevent the upper side of the 100*b* from swinging in X-axial direction taking the ink supply orifice 110*b* as an axis of rotation. The displacement preventers PO3 and PO4 are lateral to the terminals 210-290 on the board 200 (FIG. 3) and keep the terminals 210-290 in the correct position so as to contact the corresponding apparatus-side terminal 410-490 correctly.

The electrical arrangements of the ink cartridge 100*b* pertaining to Variation 14 is identical with those of the ink cartridge 100 pertaining to above-embodiment described with reference to FIG. 7. So, the description thereof is omitted.

The ink cartridge 100*b* pertaining to Variation 14 affords the following working effects in addition to the same working effects as the ink cartridge 100 pertaining to the embodiment. Since the ink cartridge 100*b* has the displacement preventers PO1-PO4, it can prevent or reduce the position displacement when the ink cartridge 100*b* is attached to the holder 4*b*. Especially, since the displacement preventers PO3 and PO4 are lateral to the terminals 210-290 on the board 200, accuracy of positioning of the terminals 210-290 relative to the corresponding apparatus-side terminals can be improved. Further, as described with reference to FIG. 3, in the board 200, the sensor drive terminal 250 and the second sensor drive terminal 290 are arranged at each end of the terminals 210-290, that is, the sensor drive terminal 250 and the second sensor drive terminal 290 are closest to the displacement preventers PO4 and PO4 respectively. This lead to improvement of accuracy of positioning of the sensor drive terminal 250 and the second sensor drive terminal 290. Therefore, the false contact between the terminals 250, 290 to which high voltage is applied and one of the non-corresponding apparatus-side terminals can be prevented or reduced.

As substitute for the board 200 in the embodiment, one of the boards 200*b*-200*s* shown in FIGS. 14-19 can be mounted on the ink cartridge 100*b* shown in FIG. 22-24.

Other Variations:

As depicted in FIGS. 17C-D and in FIGS. 18C-D, porous elements PO may be disposed within the depressed portions DE in Variation 10 and Variation 11 described above, i.e. between the terminals 150, 190 and the board. By so doing, ink drops or condensed water, which can easily cause shortening of the terminals 150, 190 to other terminals, can be effectively absorbed by the porous elements PO. Accordingly, this design also affords advantages analogous to those of Variation 10 and Variation 11 discussed above.

In the embodiment herein, the ink cartridge 100 is furnished with a sensor 104 (piezoelectric element) and memory 203 as the plurality of the devices; however, the plurality of the devices are not limited to a sensor 104 and memory 203. For example, the sensor 104 may be a sensor of a type that detects the properties or level of ink by means of applying voltage to the ink within an ink cartridge 100, and measuring its resistance. In the embodiment, among the plurality of the devices, the sensor 104 is mounted on the housing 101 and the memory 203 is mounted on the board 200. However, the arrangements of the plurality of the devices are not limited to those in the embodiment. For example, the memory 203 and the board 200 may be separate, and the memory 203 and the board 200 may be installed on the housing 101 individually. The plurality of the devices may be integrated into a circuit board or a single module. The circuit board or the single

28

module may be mounted on the housing 101 or the board 200. It's preferred that terminals connected to a device to which relatively high voltage among the plurality of the devices are arranged in positions of the first sensor drive terminal 250 and the second sensor drive terminal 290 described above, and terminals connected to a device to which relatively low voltage among the plurality of the devices are arranged in positions of the terminals 220, 230, 260-280. In this case, damage to the ink cartridge 100 and the printing apparatus 1000 caused by shorting between the terminal connected to the device to which relatively high voltage and the terminal connected to the device to which relatively low voltage can be prevented or reduced.

In above-mentioned embodiment, five terminals for memory 203 (220, 230, 260-280) and two terminals for sensor 104 (250, 290) are employed, however, other number of terminals may be employed due to the specification of the device. For example, the terminal connected to the device to which relatively high voltage may be one. In this case, such terminal may be arranged in a position of any of the terminals 250, 290 described above.

Whereas in the embodiment herein the invention is implemented in an ink cartridge 100, implementation thereof is not limited to ink cartridges, with implementation in a similar manner to receptacles containing other types of printing material, such as toner, being possible as well.

With regard to the arrangements of the main control circuit 40 and the carriage circuit 500 in the printing apparatus, portions of these arrangements implemented through hardware could instead be implemented through software, and conversely portions implemented through software could instead be implemented through hardware.

While the printing material container and board pertaining to the invention have been shown and described on the basis of the embodiment and variation, the embodiments of the invention described herein are merely intended to facilitate understanding of the invention, and implies no limitation thereof. Various modifications and improvements of the invention are possible without departing from the spirit and scope thereof as recited in the appended claims, and these will naturally be included as equivalents in the invention.

What is claimed is:

1. An ink cartridge for mounting on an ink jet printing apparatus, the ink jet printing apparatus having a print head and a plurality of apparatus-side contact forming members, the ink cartridge comprising:

a body;

an ink supply opening having an exit on an exterior portion of the body, adapted to supply ink from the ink cartridge to the printing apparatus;

a memory device adapted to be driven by a memory driving voltage;

an electronic device adapted to receive a voltage higher than the memory driving voltage; and

a plurality of terminals having contact portions adapted and positioned to contact corresponding apparatus-side contact forming members so that electrical communication is enabled with the ink jet printing apparatus, the contact portions of the terminals including a plurality of memory contact portions electrically coupled to the memory device, a first electronic device contact portion electrically coupled to the electronic device, a second electronic device contact portion electrically coupled to the electronic device, and a short detection contact portion positioned and arranged to electrically contact a

29

contact forming member that itself is electrically coupled to a short detection circuit of the printing apparatus, wherein:

the contact portions are arranged so that, when the terminal arrangement is viewed from the vantage of the contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the ink jet printing apparatus, and with the ink cartridge oriented with the exit of the ink supply opening facing downwards, the contact portion farthest to the left is the first electronic device contact portion, the contact portion that is farthest to the right is the second electronic device contact portion, the contact portion that is second farthest to the right is the short detection contact portion, and the memory contact portions are located to the left of the short detection contact portion and to the right of the first electronic device contact portion.

**2**. The ink cartridge of claim **1**, wherein the short detection contact portion is positioned and adapted for detecting a short between the short detection contact portion and at least the second electronic device contact portion, the short detection contact portion being adjacent to the second electronic device contact portion, with no other contact portion therebetween.

**3**. The ink cartridge of claim **1**, wherein the electronic device is adapted to receive a first voltage and output a voltage lower than the first voltage.

**4**. The ink cartridge of claim **1**, and including a second short detection contact portion arranged so that the second short detection contact portion is the second farthest of the contact portions to the left.

**5**. The ink cartridge of claim **4**, wherein the memory contact portions are to the left of the short detection contact portion and the second electronic device contact portion and to the right of the second short detection contact portion and the first electronic device contact portion.

**6**. The ink cartridge of claim **1**, wherein the number of contact portions adjacent to the second electronic device contact portion is smaller than the number of contact portions adjacent to the short detection contact portion.

**7**. The ink cartridge of claim **1**, wherein

the contact portions are arranged in a first row of contact portions and in a second row of contact portions such that the first row of contact portions is below the second row of contact portions, and

the first electronic device contact portion and the second electronic device contact portion are located at the ends of the first row of contact portions.

**8**. The ink cartridge of claim **1**, wherein:

the contact portions are arranged in a first row of contact portions and in a second row of contact portions,

the first row of contact portions and the second row of contact portions extend in a row direction which is generally orthogonal to an insertion direction in which the ink cartridge is mounted into the ink jet printing apparatus,

the first row of contact portions is disposed at a location that is further in the insertion direction than the second row of contact portions, and

the first electronic device contact portion and the second electronic device contact portion are located at the ends of the first row of contact portions.

**9**. An ink cartridge for mounting on an ink jet printing apparatus, the ink jet printing apparatus having a print head

30

and a plurality of apparatus-side contact forming members, the ink cartridge comprising:

a body;

an ink supply opening having an exit on an exterior portion of the body, adapted to supply ink from the ink cartridge to the printing apparatus;

a low voltage electronic device;

a high voltage electronic device; and

a plurality of terminals having contact portions adapted and positioned to contact corresponding apparatus-side contact forming members so that electrical communication is enabled with the ink jet printing apparatus, the contact portions of the terminals including a plurality of low voltage electronic device contact portions electrically coupled to the low voltage electronic device, a first high voltage electronic device contact portion electrically coupled to the high voltage electronic device, a second high voltage electronic device contact portion electrically coupled to the high voltage electronic device and arranged to have applied thereto a higher voltage than the low voltage electronic device contact portions, and a short detection contact portion positioned and arranged to electrically contact a contact forming member that itself is electrically coupled to a short detection circuit of the printing apparatus, wherein:

the contact portions are arranged so that, when the terminal arrangement is viewed from the vantage of the contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the ink jet printing apparatus, and from the perspective with the ink cartridge oriented with the exit of the ink supply opening facing downwards, the contact portion farthest to the left is the first high voltage electronic device contact portion, the contact portion that is farthest to the right is the second high voltage electronic device contact portion, the contact portion that is second farthest to the right is the short detection contact portion, and the low voltage electronic device contact portions are located to the left of the short detection contact portion and to the right of the first high voltage electronic device contact portion.

**10**. The ink cartridge of claim **9**, wherein the low voltage electronic device is a memory.

**11**. The ink cartridge of claim **9**, wherein the short detection contact portion is positioned and adapted for detecting a short between the short detection contact portion and at least the second electronic device contact portion, the short detection contact portion being adjacent to the second electronic device contact portion, with no other contact portion therebetween.

**12**. The ink cartridge of claim **9**, wherein the high voltage electronic device is adapted to receive a first voltage and output a voltage lower than the first voltage.

**13**. The ink cartridge of claim **9**, and including a second short detection contact portion arranged so that the second short detection contact portion is the second farthest of the contact portions to the left.

**14**. The ink cartridge of claim **13**, wherein the low voltage electronic device contact portions are to the left of the short detection contact portion and the second high voltage electronic device contact portion and to the right of the second short detection contact portion and the first high voltage electronic device contact portion.

**15**. The ink cartridge of claim **9**, wherein the number of contact portions adjacent to the second high voltage elec-

tronic device contact portion is smaller than the number of contact portions adjacent to the short detection contact portion.

**16**. The ink cartridge of claim **9**, wherein

the contact portions are arranged in a first row of contact portions and in a second row of contact portions such that the first row of contact portions is below the second row of contact portions, and

the first high voltage electronic device contact portion and the second high voltage electronic device contact portion are located at the ends of the first row of contact portions.

**17**. The ink cartridge of claim **9**, wherein:

the contact portions are arranged in a first row of contact portions and in a second row of contact portions,

the first row of contact portions and the second row of contact portions extend in a row direction which is generally orthogonal to an insertion direction in which the ink cartridge is mounted into the ink jet printing apparatus,

the first row of contact portions is disposed at a location that is further in the insertion direction than the second row of contact portions, and

the first high voltage electronic device contact portion and the second high voltage electronic device contact portion are located at the ends of the first row of contact portions.

**18**. A circuit board mountable on a printing material container that is used in an ink jet printing apparatus, the ink jet printing apparatus having a print head and a plurality of apparatus-side contact forming members, the printing material container having a body and an ink supply opening, the ink supply opening having an exit on an exterior portion of the body and being adapted to supply ink from the printing material container to the printing apparatus, the circuit board comprising:

a memory device adapted to be driven by a memory driving voltage;

an electronic device adapted to receive a voltage higher than the memory driving voltage; and

a plurality of terminals having contact portions adapted and positioned to contact corresponding apparatus-side contact forming members so that electrical communication is enabled with the ink jet printing apparatus, the contact portions of the terminals including a plurality of memory contact portions electrically coupled to the memory device, a first electronic device contact portion electrically coupled to the electronic device, a second electronic device contact portion electrically coupled to the electronic device, and a short detection contact portion positioned and arranged to electrically contact a contact forming member that itself is electrically coupled to a short detection circuit of the printing apparatus, wherein:

the contact portions are arranged so that, when the terminal arrangement is viewed from the vantage of the contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the ink jet printing apparatus, and with the ink cartridge oriented with the exit of the ink supply opening facing downwards, the contact portion farthest to the left is the first electronic device contact portion, the contact portion that is farthest to the right is the second electronic device contact portion, the contact portion that is second farthest to the right is the short detection contact portion, and the memory contact portions are located to the left of the

short detection contact portion and to the right of the first electronic device contact portion.

**19**. The circuit board of claim **18**, wherein the electronic device is adapted to receive a first voltage and output a voltage lower than the first voltage.

**20**. The circuit board of claim **18**, and including a second short detection contact portion arranged so that when the circuit board is mounted on the printing material the second short detection contact portion is the second farthest of the contact portions to the left.

**21**. The circuit board of claim **20**, wherein the memory contact portions are to the left of the short detection contact portion and the second electronic device contact portion and to the right of the second short detection contact portion and the first electronic device contact portion.

**22**. The circuit board of claim **18**, wherein the short detection contact portion is positioned and adapted for detecting a short between he short detection contact portion and at least the second electronic device contact portion, the short detection contact portion being adjacent to the second electronic device contact portion, with no other contact portion therebetween.

**23**. The circuit board of claim **18**, wherein

the contact portions are arranged in a first row of contact portions and in a second row of contact portions such that, when the circuit board is mounted on the printing material container and the terminal arrangement is viewed with the printing material container oriented with the exit of the ink supply opening at the bottom, the first row of contact portions is below the second row of contact portions, and

the first electronic device contact portion and the second electronic device contact portion are located at the ends of the first row of contact portions.

**24**. The circuit board of claim **18**, wherein:

the contact portions are arranged in a first row of contact portions and in a second row of contact portions,

the first row of contact portions and the second row of contact portions extend in a row direction that is, with respect to a condition in which the circuit board is mounted on the printing material container, generally orthogonal to an insertion direction in which the printing material container is mounted into the ink jet printing apparatus,

the first row of contact portions is disposed at a location that is, with respect to a condition in which the circuit board is mounted on the printing material container, further in the insertion direction than the second row of contact portions, and

the first electronic device contact portion and the second electronic device contact portion are located at the ends of the first row of contact portions.

**25**. An ink supply system connectable to an ink jet printing apparatus, the ink jet printing apparatus having a print head and a plurality of apparatus-side contact forming members, the ink supply system comprising:

an ink supply structure having an exit opening adapted to supply ink to the printing apparatus:

a circuit board comprising:

a memory device adapted to be driven by a memory driving voltage;

an electronic device adapted to receive a voltage higher than the memory driving voltage; and

a plurality of terminals having contact portions adapted and positioned to contact corresponding apparatus-side contact forming members so that electrical communication is enabled with the ink jet printing appa-

33 34

ratus, the contact portions of the terminals including a plurality of memory contact portions electrically coupled to the memory device, a first electronic device contact portion electrically coupled to the electronic device, a second electronic device contact portion electrically coupled to the electronic device, and a short detection contact portion positioned and arranged to electrically contact a contact forming member that itself is electrically coupled to a short detection circuit of the printing apparatus, wherein:

the contact portions are arranged so that, when the terminal arrangement is viewed from the vantage of the contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the ink jet printing apparatus, and with the ink cartridge oriented with the exit opening of the ink supply structure facing downwards, the contact portion farthest to the left is the first electronic device contact portion, the contact portion that is farthest to the right is the second electronic device contact portion, the contact portion that is second farthest to the right is the short detection contact portion, and the memory contact portions are located to the left of the short detection contact portion and to the right of the first electronic device contact portion.

**26**. The ink supply system of claim **25**, wherein the electronic device is adapted to receive a first voltage and output a voltage lower than the first voltage.

**27**. The ink supply system of claim **25**, and including a second short detection contact portion arranged so that the second short detection contact portion is the second farthest of the contact portions to the left.

**28**. The ink supply system of claim **27**, wherein the memory contact portions are to the left of the short detection contact portion and the second electronic device contact portion and to the right of the second short detection contact portion and the first electronic device contact portion.

**29**. The ink supply system of claim **25**, wherein the short detection contact portion is positioned and adapted for detecting a short between the short detection contact portion and at least the second electronic device contact portion, the short detection contact portion being adjacent to the second electronic device contact portion, with no other contact portion therebetween.

**30**. The ink supply system of claim **25**, wherein

the contact portions are arranged in a first row of contact portions and in a second row of contact portions such that, when the ink supply system is connected to the ink jet printing apparatus , the first row of contact portions is below the second row of contact portions, and

the first electronic device contact portion and the second electronic device contact portion are located at the ends of the first row of contact portions.

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO.         : 8,454,116 B2                                   Page 1 of 1
APPLICATION NO.  : 13/608658
DATED              : June 4, 2013
INVENTOR(S)      : Noboru Asauchi

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In the Claims

At Claim number 18, Column 31, Line number 60, delete "the ink cartridge" and insert --the printing material container--.

At Claim number 20, Column 32, Line 8, delete "the printing material" and insert --the printing material container--.

At Claim number 25, Column 33, Line 16, delete "the ink cartridge" and insert --the ink supply structure--.

Signed and Sealed this
Twenty-sixth Day of April, 2022

*Katherine Kelly Vidal*

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*